JAMES M. CHRISTMAS *vs.* EDWIN WARFIELD ET AL.

*Constitutional Law—Title of Statute—Injunction to Restrain Unlawful Expenditure of Public Money.*

The title of the Act of 1906, ch. 804, is: "An Act to repeal and re-enact with amendments sec. 2 of ch. 426, of the laws of 1904, entitled 'An Act to authorize and empower the Board of Public Works of Maryland to collect the insurance upon State Tobacco Warehouses Nos. 1 and 2, and place the same to the credit of the Tobacco Warehouse fund, and to either rebuild a modern warehouse on the present site of Tobacco Warehouse Nos. 1 and 2, and the property owned by the State adjacent thereto, or to sell said property or lease the same for such sum as they may think right and build a Tobacco Warehouse in some locality of

Baltimore City selected by said Board of Public Works.' " The body of the Act created a governmental agency, distinct from the Board of Public Works, called The State Tobacco Warehouse Building Commission, and authorized that commission to rebuild, enlarge and equip warehouses Nos. 3, 4 and 5, and to purchase a site on the water front in Baltimore in a designated location for the erection of a tobacco warehouse of a certain capacity, and in case a suitable site could not be obtained in that locality, the commission was authorized to build on the sites of houses A and B of Warehouse No. 3. *Held*, that since the title of the Act of 1906, does not indicate in any degree the nature of the proposed legislation, it is misleading and the Act is void because in conflict with Constitution, Art. 3, sec. 29, which declares that the subject of every law enacted by the General Assembly shall be described in its title.

A resident and taxpayer of the State is entitled to maintain a suit to restrain the expenditure of public money and the destruction of the State's property under an unconstitutional Act of the Legislature.

*Decided April 3rd, 1907.*

Appeal from Circuit Court No. 2, of Balimore City (WICKES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Isaac Lobe Straus,* for the appellant.

This title has two distinctive features: 1. It is an amendatory title, or, more precisely, a title of an amending statute. 2. Its terms are expressly restrictive.

In respect to the first of these two features, as a title of an amending Act, the title under consideration identifies the number of the section and the chapter of the Act amended and quotes its title, without stating or describing the subject or purpose of the amendment which it proposes to make. In other words it describes the subject dealt with by naming the section and quoting the title of the Act amended, and beyond this it does nothing whatsoever. It contains no description of anything, independently of the title of the original Act. It expresses no object or subject or purpose outside of the original title. Under such circumstances the amending Act can contain no provision which is not described by or germane to

the title of the Act amended, and if the amending Act con-
tains any provision not within the scope of the title of the Act
amended, such provision is unconstitutional and void.

In respect to the *second* of the *two* characteristics features of
this title above referred to, it will be noted that its terms are
expressly *restrictive* as to—

(*a*) The *section*—*i. e.*, Section 2 of the Act which it proposes
to amend.

(*b*) The *Administrative Agency* which is to carry out the
things which under the Act are to be done—*i. e.*, *The Board
of Public Works of Maryland.*

(*c*) The *things themselves* which, under the Act, are to be
done.

If the context of the statute calls for anything either not
within the limits of or in conflict with the express restrictions
of the title touching the matters above mentioned, then the
context of the statute is, to the extent of such transgression or
conflict, void.

The restrictive terms of the title require that the subject
matter of the Act must be kept within it see *Cooley's Const
Limitations*, 7 ed. p. 212; 26 *Am. and Eng. Ency. of Law*
590; 1 *Lewis Sutherland's Statutory Construction*, secs. 117, 120
and 145; *Potter's Dwarris on Statutes*, 104; note to *Bobel* v.
*People*, 64 Am. State Rep. 77; *Whitman's case*, 80 Md. 410;
*Stiefel's case*, 61 Md. 148-9; *Kafka's case*, 99 Md. 238; *Parker's
case*, 99 Md. 189; *German Bank case*, 103 Md. 196; *Schultz
Co. case*, 83 Md. 58; *Benzinger's case*, 83 Md. 481; *Luman's
case*, 90 Md. 14; *Steenken's case*, 88 Md. 708; *Scharf's case*,
73 Md. 378.

As to the legal principle enunciated above that where
the title of an amending Act merely declares its object to be
to amend a former Act, and identifies the former Act by its
chapter number and its title without describing, in addition to
or independently of the title of the former Act, the subject
matter of the proposed amendment, the provisions of the
amending Act must in such case, in order to be valid, be
within the scope of the title of the original or former Act,

there is not merely a current, but a torrent, of authority, into which almost every State in the Union has sent its stream of decisions. 1 *Lewis' Sutherland Statutory Construction*, sections 137, 139; 26 *Am. and Eng. Ency. of Law*, 593; notes to *Winona* v. *School District*, 12 Am. St. Rep., 695 and *Crookston* v. *County Courts*, 79 Ibid, 480.

In *Cooley's Constitutional Limitations*, 7 (last) Edition, page 205, note 2, it is asserted: "Under an amendatory title nothing can be enacted but what amends the old law. *Matter which might have come under the original title, but did not, cannot be introduced—State* v. *Smith*, 35 Minn, 257, 28 N. W. 241; *Tongue* v. *Port Chester*, 101 N. Y. 294; *State* v. *Walker*, 105 La. Ann. 492, 29 So. 973; *Armstrong* v. *Mayer*, 60 Neb. 423; 83 N. W. 401."

The principle here under discussion that the title of an amending Act which merely refers to the chapter number and quotes the title of the Act amended, is no broader than the title of the act amended, and is held to exclude everything that the title of the Act amended excludes, has never been discussed or distinctly announced by the Court of Appeals of Maryland, but it is recognized in the cases of *Parker* v. *State*, 99 Md. 189; *State* v. *Savings Bank*, 103 Md. 196; *Whitman* v. *State*, 80 Md. 410; *Bldg. Assn.* v. *Newman*, 50 Md. 62; *State* v. *Norris*, 70 Md. 91.

See also to the same effect of an Act entitled merely an Act to amend a former Act, *Crowther* v. *Ins. Co.*, 85 Fed. Rep. 41; *State* v. *Bowers*, 14 Ind. 195; *Improvement Co.* v. *Arnold*, 46 Wis. 214; *Street* v. *Horten*, 131 Ala. 501; *State* v. *Sugar Co.*, 106 L. An. 563; *Dolse* v. *Pierce*, 124 Ill. 140; *Hyman* v. *State*, 87 Tenn. 109; *Grosvenor* v. *Duffy*, 121 Mich. 220; *Fish* v. *Stockdale*, 111 Mich. 46; *Eaton* v. *Walker*, 76 Mich. 579; *State* v. *Smith*, 35 Minn. 257; *School District Case*, 23 Colo. 499; *In re Werner*, 129 Cal. 567; *Webster* v. *Powell*, 36 Fla. 703; *Adams* v. *Water Co.*, 86 Texas, 485; *Mt. Joy* v. *Lancaster Co.*, 182 Pa. 581; *State* v. *Hallock*, 19 Nev. 384; *Williamson* v. *Keokuk*, 44 Iowa, 88; *Parfitt* v. *Ferguson*, 159 N. Y. 116.

The title of the Act of 1906 is restricted to the repeal and re-enactment with amendments of the Act of 1904. This clear and definite restriction is disregarded and exceeded by the Act, in that, besides amending sec. 2, it adds secs. 3, 4 and 5. Nothing is said in the title about the addition of these new sections. On the contrary, the title merely refers to section 2 and restricts the object of the Act "to repeal and re-enact with amendments, sec. 2 of ch. 426 of laws of 1904."

Code, sec. 2, as re-enacted by ch. 804 of the Acts of 1906, is not described in the title of the Act and is in conflict with the title. There would seem to be no escape at all from this proposition. The title, it will be noted, calls for two things as parts of the subject to which it relates, namely: 1. The things to be done. 2. The administrative agency for the doing of the things.

Taking up the second matter first, we find that the title prescribes that the administrative agency which is to carry out the things to be done under the Act is the Board of Public Works. This is a perfectly definite and well known body. It is established by the Constitution, and, as the Legislature and every citizen is presumed to know, it consists of the Governor, the Treasurer and the Comptroller, the three chief executive officials of the State. It is this definite, well known and constitutional body which, according to the title, is to carry out the duties and functions prescribed by this Act. The title says nothing whatever about any other commission or functionary to execute those duties and functions.

Now then, section 2 prescribes and provides for an entirely different administrative agency to execute the Act from the agency called for by the title. It provides for a commission entirely different from the Board of Public Works, in its constitution, name and organization. This different commission is to be known as the State Tobacco Warehouse Building Commission. It is to consist not of the Board of Public Works, composed of the three chief officials of the State, two of whom are elected by the people and third by the General Assembly, but of these three officials together with five other

gentlemen who are named. The new commission then, is not the specific ascertained board created by the Constitution and distinctly described in the title, but a commission consisting of eight members, including the members of the Board of Public Works as a minority of said commission. It is then apparent that the new commission created by sec. 2 is a commission, which if valid, may act through five of its members, or even four of its members exclusive of the Board of Public Works and of all the members of the Board of Public Works, and perform the functions which the title distinctly and restrictively says shall be performed by the Board of Public Works, not merely without the acquiescence, but without the presence, or even in the face of objections and protest upon the part of the members of the Board of Public Works or any of them.

For example, a majority, that is to say *five* of the eight members of the commission would be a *quorum* for the trans-, action of its business. Of such a *quorum*, a majority, that is to say, *three* members would be legally competent to act. So that Code, sec. 2 of the Act of 1906, chap. 804, *confers authority upon any three of the private citizens named as members of the Building Commission*, to administer an important public work involving the expenditure of large sums of public money, and in this case the demolition of valuable public buildings, instead of vesting such authority in the Board of Public Works which alone is specifically designated and required by the title of the Act.

It is plain, therefore, that the executive agency designated in the title, namely, the Board of Public Works, and the executive agency sought to be established by section 2 of the Act, namely, the State Tobacco Warehouse Building Commission, are entirely different and distinct bodies, and there is no ingenuity capable of demonstrating that these two functionaries, so palpably and radically different, are or even were intended to be the same.

The State Tobacco Warehouse Building Commission is not lawfully created by the Act of 1906, because its creation is not only not described in the title of the Act, but is in conflict

with the title. *Mayor, etc., of Baltimore* v. *Flack*, 104 Md. 107; *Cahill* v. *Hogan*, 180 N. Y. 304; *People* v. *Howe*, 177 N. Y. 499; *Seigmaier* v. *Jones*, 203 Pa. 47; *Com.* v. *Samuels*, 163 Pa. 283; *Com.* v. *Severn*, 164 Pa. 462; *Brooks* v. *Hydom*, 76 Mich. 273; *Board* v. *Barlow*, 49 Ga. 232; *Brown* v. *State*, 79 Ga. 324; *State* v. *Douglas Co.*, 47 Neb. 428; *State* v. *Burns*, 38 Fla. 367.

As to the difference and conflict between the things which the title says shall be done and the things which the body of the Act says shall be done.

The title provides for :

1. The collection of the insurance money, and placing the same to the credit of the Tobacco Warehouse Fund.

2. To rebuild a modern warehouse *on the present site of the Tobacco Warehouses Nos. 1 and 2, and the property of the State adjacent thereto.*

3. Or to sell or lease the said property, *i. e.*, site of former warehouses Nos. 1 and 2, and build a tobacco warehouse in same locality, in Baltimore City, to be selected by the Board of Public Works.

The preamble of the Act of 1906 shows that the insurance money was collected, and the site of warehouses Nos. 1 and 2 sold.

As compared with the things which the title says shall be done, what are the things which section 2 says shall be done

They are—

1. Rebuilding, enlarging and fully equipping warehouses Nos. 3, 4 and 5. *Not one word about this is contained in the title, which calls for something else.*

2. And *if sufficient amount remain in the tobacco fund for the purchasing a suitable site on the water front in the City of Baltimore*, and erecting thereon a tobacco warehouse, with a capacity of at least 8,000 hogsheads, provided the site shall be West of Market space and north of Hughes avenue. It will be noted that the purchase of the site here referred to and the erection of the warehouse thereon is conditioned upon the contingency that sufficient amount remain in the tobacco fund"

*after the "rebuilding, enlarging and fully equipping Warehouses Nos. 3, 4 and 5."*

The title makes provision for no such plan.   The title says in its concluding part that the Board of Public Works shall "build a Tobacco Warehouse in some locality in Baltimore city selected by the Board of Public Works."   This is something altogether different from the "rebuilding, enlarging and fully equipping Warehouses 3, 4, and 5, and if sufficient amount remain in the Tobacco Fund for the purchasing a suitable site, etc., and erecting thereon a Tobacco Warehouse, etc." prescribed by section 2.

Moreover, the title says that the locality shall be "selected by said Board of Public Works."   By section 2, the site is left to the selection of the Building Commission of eight members, of which the Board of Public Works are not only in a minority but not necessary to make a quorum of the commission.

3.  "In case said commission shall be unable to obtain a suitable site within said bounds, they shall cause to be rebuilt *on the site of houses A and B of No. 3 Warehouse,* a modern and fully equipped house for the inspection and storage of tobacco."

This is in plain conflict with the title, for the following reasons:

(*a*) It is conditioned upon the contingencies above mentioned, which have been shown not to be described by the title, which calls for something altogether different.

(*b*) Because, by the title, the Board of Public Works, and *not* "the said commission" is required to select the site.

(*c*) Because the title does not contemplate or authorize a provision in the Act for the destruction of houses A and B of No. 3 Warehouse to make room for a new warehouse.

This is shown by the provisions of the title requiring first that a new warehouse be put up on the present site of Warehouses Nos. 1 and 2, and property owned by the State adjacent thereto, but that if the site of Warehouses Nos. 1 and 2 should be sold or leased then the Board is to "build a

tobacco warehouse in some locality in Baltimore city selected by said Board of Public Works." If this language had contemplated the erection of a warehouse on the site of any existing warehouse of the State its framers surely would not have been so careful to provide that a new site shall be selected only in the event that the sites of Warehouses Nos. 1 and 2 had been sold or leased.

2. Even if the Act of 1906, Chapter 804, be valid, it does not confer the slightest authority upon the appellees for the plans and proceedings which the bill specifically charges they are about to carry out.

3. The Legislature can not lawfully mix the Board of Public Works, as organized under the Constitution, with a number of other persons and require it under such circumstances to act in the manner prescribed by the Act of 1906, Chapter 804.

*William S. Bryan, Jr., Attorney General,* for the appellees.

Anybody reading the title to this ch. 804 of the Acts of 1906 would know that it amended the provisions of section 2 of ch. 426 of the Acts of 1904; and if he then turned to sec. 2 of the Act of 1904, he would see the subject matter of the Act, and would know that some changes were to be made in the law on that subject.

It is precisely like the case where the title of the Act said that a certain section of a certain Article of the Code of Public General Laws was to be amended. This has been held to be sufficient. *Garrison* v. *Hill*, 81 Md. 551, 555.

It is not believed that there would be any question about the validity of this Act if secs. 2, 3, 4 and 5 of it had all been placed in a single new section and called section 2. And it is not believed that the fact that the draughtsman of the Act, for convenience, split up the new matter in the Act into several sections can invalidate it. The Court will see that the *substance* of the Constitutional provision is complied with, and will not concern itself with mere formalities. *McPherson* v. *Leonard*, 29 Md. 389.

It is not necessary to remind the Court that the Act will be

held constitutional, unless it is plainly and palpably in viola-
tion of the Constitution. *State* v. *Hyman*, 98 Md. 619.
Whether the policy of building the new Tobacco Warehouse
is wise or not, is a matter ·confided to the discretion of the
legislative branch of the State government, and with it the
Courts have no concern.

BURKE, J., delivered the opinion of the Court.

The appellant filed a bill of complaint in the Circuit Court No.
2, of Baltimore City, against the appellees praying that "a pre-
liminary and a perpetual injunction may issue restraining the de-
fendants, and each of them, from acting or assuming in any man-
ner to act as a State Tobacco Warehouse Building Commission for
any purpose or in any respect whatsoever, and further restrain-
ing and enjoining them, and each of them, from doing any act
or thing or taking any· steps or proceedings whatsoever to de-
molish or cause to be demolished any of the existing Tobacco
Warehouses of the State of Maryland, and particularly To-
bacco Warehouse No. 4 and section "B" of Tobacco Ware-
house No. 3; and restraining and enjoining them, and each of
them, from entering into any contract upon the part of the
State of Maryland, or in any manner involving the funds of
said State, or any of them, for the preparation of plans or
specifications for a new building to·serve as a State Tobacco
Warehouse or for the construction or building of any such
warehouse, and particularly of a warehouse consisting of eight
stories and with a capacity for the storage and inspection of
about twenty thousand hogsheads of tobacco upon the site of
Warehouse No. 4 and section "B" of Warehouse No. 3; and
further restraining and enjoining said defendants from expend-
ing, disbursing, charging, pledging or contracting in any man-
ner whatsoever with reference to said funds of two hundred
and sixty-seven thousand dollars ($267,000), mentioned in
said bill of complaint, or any part of the same."

The appellees demurred to the entire bill, which demurrer
the Court sustained, and by its order passed on the 17th day
of January, 1907, the bill of complaint was dismissed, and from
that order the appeal in this case was taken.

The bill was filed by the appellant, James M. Christmas, as a property owner, taxpayer, and resident of Prince George's County, Maryland, on his own behalf and in behalf of all other taxpayers of the State, who might care to come in and avail themselves of the suit. The facts, which are admitted by the demurrer, are that the complainant is a taxpayer as alleged; that prior to the 7th and 8th of February, 1904, the State of Maryland had five tobacco warehouses in Baltimore City, whose capacity for the storage and inspection of tobacco was so much in excess of actual needs for such purposes that one of said warehouses, to wit, No. 2, was leased to the Pennsylvania Railroad Company. That of said five warehouses Nos. 1 and 2 were destroyed by said fire, and that the insurance money accruing as indemnity to the State for the destruction of said two warehouses and also from the sale of the sites on which said two warehouses were located, together with the sum paid the State by the city of Baltimore for a part of a lot belonging to the State, and taken by the said city for the purpose of widening Light street therein amounted to the sum of two hundred and sixty-seven thousand dollars ($267,000.00), which sum was and is now credited to the State Tobacco Warehouse Fund and is a part of the public money of the State of Maryland; that the appellees propose to destroy said warehouses and to build a new warehouse, and in doing so are assuming to act as the State Tobacco Warehouse Building Commission created by the Act of 1906, chapter 804.

The bill charges that the destruction of said warehouses and the erection of a new one, as the defendants propose to do, and which they are about to begin and carry out, would be not only unlawful, but would result in a total loss of said sum of two hundred and sixty-seven thousand dollars ($267,000.00) belonging to the State, and would involve the loss of valuable State property, and would embark the State in an enterprise, which would be fraught with undesirable burdens and heavy and constant pecuniary losses to the State, and that the pursuance of the proposed plans as indicated would commit the

State to an unwise, discredited, and obsolete policy, which its best interests would require to be abandoned.   The bill then sets out in detail facts tending to establish this allegation of waste, extravagance, and unbusiness like policy.   The grounds upon which he rests his right to relief are, first, the unconstitutionality of the Act of 1906, chapter 804, under the authority of which the appellees are assuming to act; secondly, that assuming said Act to be valid, it confers upon the appellees no authority to do the things they are about to do, and hence their proposed plans and acts are *ultra vires*, and their consummation by the defendants, being unauthorized by law, should be restrained by the Court.

The Act is said to be unconstitutional and void, because, it is asserted, the subject-matter of the Act is not described in its title as required by Article 3, section 29 of the Constitution. If this objection be well taken the Act must be stricken down, and the undertaking of the appellees arrested.   In the case of *Fout and Others* v. *The County Commissioners of Frederick County, post* p. 545, we had an occasion to consider, and state with some particularity the purpose and operation of that Article and section of the Constitution, and we do not deem it necessary to repeat what was there said with respect to that subject.   In the case of *Kafka* v. *Wilkinson*, 99 Md. 238, the Court, speaking through JUDGE JONES in reference to the fre quency with which this section of the Constitution had been considered said: "It has received a liberal construction, and the Courts have been reluctant in any case to give it an operation which would defeat the legislative intent, yet they have not hesitated to strike down legislative acts that were clear infractions of its purpose and object.   These have been declared to be two fold; the first is to prevent the combination in one act of several distinct and incongruous subjects, and that the second is that the Legislature and the people of the State may be fairly advised of the real nature of impending legislation.   It would seem that if the object of the constitutional provision in question is to be respected and is to have meaning and effect in controlling legislation, the considerations

which have just been mentioned must have a controlling effect in applying it."

In the earlier case of *Stiefel* v. *Maryland Institute for the Instruction of the Blind*, 61 Md. 148, it was said "that publicity and a knowledge of the true effect and operation of every bill brought before the Legislature are the great safeguards against ill-considered and improper legislation. The provision is one among many others in the Constitution designed to promote those objects. Bills are sometimes read, especially the first time, by their titles only, and the titles only are spread upon the journal. It is therefore important that the title to the bill should not be misleading, and at least a general idea of the purport of the law may be gathered from it."

To the same effect are all the decisions of this Court dealing with the sufficiency of the title, the latest of which are the *State* v. *The German Savings Bank*, 103 Md. 196, and *Mayor, &c.,* v. *Flack et al.,* 104 Md. 107. In the latter case CHIEF JUDGE McSHERRY mentioned some cases in which statutes have been stricken down because of insufficient titles: "There are several cases," he said, "which illustrate the vice of incorporating in the Act something entirely foreign to the subject-matter described in the title. Thus in' *Scharf* v. *Tasker*, 73 Md. 378, under an Act to provide for the assessment of unclaimed military lots in Allegany and Garrett Counties, a section of the Act which exempted Garrett County from the obligation of paying fees to the Commissioner of the Land Office then due for searches previously made, was stricken down. And in *State* v. *Shultz Company*, 83 Md. 58, the title had relation to newly incorporated companies, whilst the act included existing companies. In *Luman* v. *Hitchens Bros.*, 90 Md. 15, the title prohibited sales to employees whilst the act prohibited sales to anyone."

The Maryland rule upon this subject is in accord with the current of decisions in other States which have incorporated in their organic laws provisions similar to our own. These decisions, with much research and labor and skillful arrangement, have been collected and cited in the carefully prepared

brief of the appellant's counsel, but as most of these cases merely support and illustrate the Maryland doctrine upon the subject we do not deem it necessary to discuss them.

The Act, which is assailed in this case (Act 1906, chapter 804), is entitled : "An Act to repeal and re-enact with amendments section 2 of chapter 426 of the laws of 1904, entitled "An Act to anthorize and empower the Board of Public Works of Maryland to collect the insurance upon State Tobacco Warehouses Nos. 1 and 2, and place the same to the credit of the Tobacco Warehouses Fund, and to either rebuild a modern warehouse on the present site of Tobacco Warehouses Nos. 1 and 2, and the property owned by the State adjacent thereto, or to sell said property or lease the same for such sum as they may think right and build a tobacco warehouse in some locality of Baltimore City selected by said Board of Public Works." The body of the Act embraces six sections. The first section embodies a literal transcript of the title of the Act of 1904, chapter 426, and repeals and re-enacts its second section so as to read as follows:

"Sec. 2. *And be it further enacted*, That the members of the Board of Public Works, together with Henry Lantz, William B. Claggett and Joshua S. Rawlings, Adrian Posey and John H. Drury, shall be and they are hereby constituted the State Tobacco Warehouse Building Commission, without compensation, for the purpose of rebuilding, enlarging, and fully equipping Warehouses Nos. 3, 4 and 5, and if sufficient amount remain in the tobacco fund for the purchasing a suitable site on the water front in the city of Baltimore, and erecting thereon a tobacco warehouse with a capacity of at least eight thousand (8,000) hogsheads, provided the site shall be west of Market space and north of Hughes avenue ; and in case the said commissioners shall be unable to obtain a suitable site within the said bounds they shall cause to be rebuilt on the site of houses "A" and "B" of No. 3 Warehouse a modern and fully equipped house for the inspection and storage of tobacco."

Sec. 3 provides that the Governor shall be President of the

Commission, and contains a provision as to how vacancies therein shall be filled; Sec. 4 provides that as soon after the passage of the Act as possible, said Commission shall organize and select a Secretary and proceed to purchase or lease a convenient and suitable site or lot of ground having water front in the City of Baltimore, and shall proceed to procure plans and specifications for said warehouse; it further provides for the advertising for bids, the awarding of the contract, the employment of an architect, and for the proper equipment of the warehouse; Sec. 5 authorizes the expenditure of the money credited to the Tobacco Warehouse Fund from the insurance money collected from the former warehouses Nos. 1 and 2, and from the sale of the sites of the same, or which may hereafter be credited to said fund from the sale of warehouse No. 3 "A."

The title describes certain duties which it is intended shall be imposed the *Board of Public Works.* The title is restrictive in character, and points out three specific things which the *Board of Public Works* is authorized to do; first, to collect the insurance upon warehouses Nos. 1 and 2, and place the same to the credit of the Tobacco Warehouse Fund; second, *to rebuild a modern warehouse on the present site of warehouses Nos. 1 and 2* and the property owned by the State adjacent thereto; or thirdly to sell said property, or lease the same, and build a tobacco warehouse on some locality in Baltimore city selected by the *Board of Public Works.* The second section of the Act, which we have transcribed in full, establishes a governmental agency entirely distinct from the Board of Public Works called the State Tobacco Warehouse Building Commission, and which the Act declares is established for the following purposes; first to *rebuild, enlarge and equip warehouses Nos. 3, 4 and 5:* and second to purchase a suitable site on the water front in Baltimore city in the location mentioned in the Act, and to erect thereon a tobacco warehouse with a capacity of at least eight thousand hogsheads, and in case a suitable site cannot be secured in the locality mentioned in the Act, the *Commission* is authorized to build *on the sites of warehouses*

"*A*" *and* "*B*" *of No. 3* Warehouse a modern and fully equipped house for the storage and inspection of tobacco.

It is thus clearly apparent that the things authorized to be done by section 2 of the Act, and the agency by which they are directed to be done are entirely different from the things indicated in the title. It seems to be perfectly plain that the title of this Act does not indicate in the slightest degree the nature of the proposed legislation. No one looking at the title would suppose for a moment that it was proposed to create such a Commission as that established by the Act, and to confer upon it the powers and duties therein expressed. The title is so insufficient and misleading as to be obnoxious to section 29 of Article 3 of the Constitution, and, therefore, the Act must be declared void. It follows that the work about to be undertaken by the appellees is without warrant or law.

The appellant, who is a resident and tax payer of the State, has such a special interest in the subject matter as to entitle him to maintain a suit to restrain the unauthorized destruction by the appellees of valuable State property, or the unwarranted expenditure by them of the funds of the State. In accordance with the views herein expressed, the order appealed against will be reversed, and the cause remanded.

*Order reversed, and cause remanded, with costs.*