STATE OF MARYLAND

*vs.*

CHARLES W. KING.

*Appeals*: *criminal cases; State's exceptions. Constitutional law*: *section* 29, *Article* 3; *title of statutes. Chattel loans*: *regulating liens; Ch.* 208, *Acts of* 1902; *constitutional.*

Under the Act of 1892, Chapter 506 (section 80 of Article 5 of the Code of 1912), an appeal in a criminal case brings up for review the exceptions and the judgment upon the demurrers.

p. 496

But, under this Act, as under the Act of 1872, Chapter 316, on the State's appeal in criminal cases, the Court of Appeals is required to notice the State's exceptions only where the parties accused have been *convicted,* and have also taken exceptions and appeals.

p. 496

Where, however, the defendant has not been tried on the indictment, nor upon one or more counts charging different offenses, and the State's appeal brings up for review the judgment of the Court on the demurrer, a different principle applies.

p. 497

In such a case, if it shall be found that there was error in the rulings excepted to by the accused, so that a new trial can be awarded him, it is then the duty of the Court of Appeals to consider and determine all questions raised by the State on its

appeal, so that in the new trial, the Court below can be guided by the judgment of the Court of Appeals on all such questions, as well as on those raised by the accused.  p. 495

While a liberal construction is to be given to section 29 of Article 3 of the Constitution, relating to the title of statutes, yet where in any case, the title of an Act violates the provisions of that section, it is the duty of the courts so to declare.  p. 497

The purpose of. this constitutional requirement is to prevent the combination in one Act of several distinct and incongruous subjects, and that the people may be fairly advised of the real nature of the pending legislation.  p. 498

To gratify this provision, the title need not be an abstract of the bill, nor give the details of the Act; but it must not be misleading by apparently limiting the enactment to a much narrower scope than is found in the body of the Act.  p. 498

The title to the Act of 1902, Chapter 208, declares the Act to be for the regulation of loans secured by liens "upon household furniture and effects, musical instruments, typewriters and sewing machines," *in use or located in any dwelling house;* while the body of the Act includes not only *all* personal property of the kinds named, whether *in use or located in a dwelling house,* or not, but also includes "any other chattels," and contravenes the provisions of section 29 of Article 3 of the Constitution, and is invalid.  p. 499

A traverser ought not to be called upon to answer a count containing some good charges and others upon which there could be no conviction. The accused, in such a case, has the right to have the invalid counts eliminated before trial on an indictment containing other counts that are good.  p. 500

*Decided January 12th, 1915.*

Appeal from the Criminal Court of Baltimore City. (ELLIOTT, J.)

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

The facts are stated in the opinion of the Court.

*Horton S. Smith* and *Lindsay C. Spencer, Assistant State's Attorney for Baltimore City* (with whom were *Edgar Allan Poe, the Attorney General,* and *Wm. F. Broening, State's Attorney for Baltimore City,* on the brief), for the appellant.

*Wm. Purnell Hall* (with whom was *Albert S. J. Owens* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

The appellee was indicted in the Criminal Court of Baltimore for a violation of section 7 of Article 49 of the Code of 1912.

That section provides that

"It shall not be lawful for any individual, partnership, association or corporation lending money within the limits of this State and taking as security for the repayment thereof a lien upon any household furniture and effects, musical instruments, typewriters and sewing machines or any other personal chattels, whether such lien shall be in the nature of a conditional sale, chattel mortgage, bill of sale, whether recorded or unrecorded, or any other lien of any character whatsoever, to have or charge for the use of money so loaned more than the lawful rate of interest thereon as fixed by the provisions of section 57 of Article 3 of the Constitution of the State of Maryland, and that no additional sums, either in the way of bonus or otherwise, shall be required or exacted of the borrower or borrowers; and further, that no charges for examination or valuation of property offered, insurance of same, and preparation, execution and recording of necessary papers shall be imposed except as follows: for examination or valuation of property offered for security for loan and preparation of papers (both included), the sum of five dollars where the amount loaned does not exceed fifty dollars; six dollars where the amount

exceeds fifty and equals one hundred dollars or less; and five per centum additional of the excess over one hundred dollars where the amount loaned exceeds one hundred dollars and equals one thousand dollars or less; and two and one-half per centum additional of the excess over one thousand dollars where the amount loaned exceeds one thousand dollars; for necessary affidavit, recording papers, revenue stamps and fire insurance premiums, the amounts actually to be paid for same; provided, that the foregoing charges and interest as herein provided may be deducted from the principal of the loan when the same is made; and provided further, it shall not be lawful to make any charges for renewals or extensions of loans, nor to divide or split up loans under any pretext whatsoever for the purpose of requiring or exacting any other or greater charges than prescribed herein; and provided, that where a loan is paid off before maturity, interest shall be rebated to the borrower or borrowers at the rate of six per centum per annum on the amount so paid; and any violations of the provisions of this section shall be a misdemeanor and punishable by a fine of one hundred dollars for the first offense, and of a like fine and imprisonment in jail for thirty days for the second and each subsequent offense; and further, the entire amount loaned shall be forfeited to the borrower or borrowers and the mortgage therefor given shall become null and void."

The indictment, which was filed on the 30th of August, 1912, contained eight counts. The first count charged that the appellees,

"on the sixth day of February, in the year of our Lord nineteen hundred and eleven, did lend money to one John H. Pumphrey, and did take as security for the repayment thereof a lien upon certain household furniture and effects, musical instruments, typewriters and sewing machines, and certain other personal chattels of him, the said John H. Pumphrey, and did later,

to wit, on the sixth day of December, in the year of
our Lord nineteen hundred and eleven, at the city
aforesaid, unlawfully have and receive for the use of
the money so loaned as aforesaid more than the lawful
rate of interest thereon as fixed by the provisions of
section fifty-seven of Article three of the Constitution
of the State of Maryland, to wit, the rate of six per
centum per annum, contrary to the form of the Act
of Assembly," etc.

The remaining counts contain the following charges: (2)
That the appellee loaned the money to John H. Pumphrey,
etc., and, on the 6th day of December, 1911, unlawfully
charged for the use of said money more than the lawful
rate of interest thereon. (3) That he unlawfully required
and exacted of said borrower certain additional sums of
money in the way of bonus and otherwise. (4) That he
loaned to the said Pumphrey a sum not exceeding fifty
dollars and unlawfully imposed upon and charged him for
the examination and valuation of the property and for the
preparation of the papers more than five dollars. (5) That
he unlawfully imposed upon and charged the said Pumphrey
"for the necessary affidavits, recording papers, revenue stamps
and fire insurance premiums more than the amounts that
were actually to be paid for the same." (6) That he unlaw-
fully made certain charges for renewals and extensions of
said loan. (7) That he did unlawfully divide and split up
said loan "under a certain pretext" for the purpose of requir-
ing and exacting certain other and greater charges than
were prescribed by law. (8) That the said Pumphrey paid
off the loan before maturity, and that the appellee unlawfully
"refused, neglected and failed to rebate to the said borrower—
interest at the rate of six per centum per annum on the
amount so paid by" him.

The defendant demurred to each count, and the Court
below sustained the demurrer to the first count and overruled
the demurrers to the others. A plea of not guilty was then

entered, and the case was submitted to the Court without a jury. The traverser having been acquitted, the State has appealed, and the only question presented by the record relates to the ruling of the Court below sustaining the demurrer to the first count.

Under the Act of 1892, Chapter 506, now section 80 of Article 5 of the Code of 1912, an appeal in a criminal case brings up for review both the exceptions and the judgment upon the demurrers. *Avirett* v. *State*, 76 Md. 510.

In the case of *State* v. *Shields*, 49 Md. 301, JUDGE MILLER said that "after the acquittal of a party upon a regular trial on an indictment for either a felony or misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor, in any form of proceeding, be set aside and a new trial granted," and that the "Legislature has never undertaken to confer jurisdiction and require the Court of Appeals to express opinions upon mere moot questions and abstract propositions." In construing the Act of 1872, Ch. 316, he said further: "The Court of Appeals is required to notice exceptions by the State in criminal cases, on appeals by the State, only in cases where the parties accused have been convicted, and have also taken exceptions and appeals. In such a case, if it shall be found that there was error in the rulings excepted to by the accused, so that a new trial can be awarded him, it will then become the duty of this Court to consider and determine all questions raised by the State on its appeal, so that in the new trial the Court below can be guided by the judgment of this Court on all such questions, as well as on those raised by the appeal of the accused." The same construction was given the Act of 1892, Ch. 506, which amended the Act of 1872, in the case of *Birkenfeld* v. *State*, 104 Md. 253, where there were cross appeals, and where this Court, after holding that there were no errors in the rulings excepted to by the accused, said through JUDGE PEARCE: "It would be idle to require this Court to consider

and determine a question which under no circumstances could be again considered by the Court below."

But a different principle applies where the defendant has not been tried upon the indictment, or upon one or more of the counts therein, charging different offenses (*State* v. *Blakeney*, 96 Md. 711), and the appeal by the State brings up for review the judgment of the Court below on the demurrers. *State* v. *Buchanan, et al.*, 5 H. & J. 317; *State* v. *Floto*, 81 Md. 600; *State* v. *Camper*, 91 Md. 672. In *State* v. *Camper*, the accused was indicted for a violation of the local law of Dorchester County, making it unlawful to sell or take orders for intoxicating liquors in the Seventh Election District of that County. It appears from the record in that case that the first count in the indictment charged the traverser with having sold whiskey, and the second count charged him with having taken an order for one pint of whiskey in said election district. The accused demurred to both counts, the Court below sustained the demurrer to the second count, and he was tried and acquitted on a plea of not guilty to the first count. On appeal by the State this Court reversed the judgment of the Court below on the demurrer to the second count and remanded the case.

In view of the conclusion we have reached in the case at bar, it is not important to determine whether all the counts in the indictment, charged different and distinct offenses, and whether, upon a reversal of the judgment of the Court below on the demurrer to the first count, the appellee could be tried upon that count.

Section 7 of Article 49 of the Code of 1912, under which the appellee was indicted, is a codification of the Act of 1900, Ch. 404, as amended by the Act of 1902, Ch. 208, and it is urged on behalf of the appellee that the title of the latter Act is defective in that it does not sufficiently describe its subject as required by section 29 of Article 3 of the Constitution of this State.

This requirement of the Constitution is the one most frequently relied upon in attacks upon legislative enactments,

and the Courts, in order that the intent of the Legislature may not be defeated, have given it a liberal construction. Where, however, the Act assailed is a clear infraction of the rule, because in violation of its object and purpose, it becomes the duty of the Court to so determine.

The purpose of this constitutional requirement is said to be two-fold. "The first is to prevent the combination in one act of several distinct and incongruous subjects; and the second is, that the Legislature and the people of the State may be fairly advised of the real nature of the pending legislation." This Court has accordingly held that while the title "need not contain an abstract of the bill, nor give in detail the provisions of the Act, it must not be misleading by apparently limiting the enactment to a much narrower scope than the body of the Act; nor ought it "to be such as to divert attention from the matter contained in the body of the Act." *State* vs. *Norris et al.,* 70 Md. 91; *State v. Schultz Co.,* 83 Md. 58; *Luman* v. *Hitchens Bros. Co.,* 90 Md. 14; *Kafka* v. *Wilkinson,* 99 Md. 238; *Somerset Co.* v. *Pocomoke Bridge Co.,* 109 Md. 1; *Nutwell* v. *Anne Arundel Co.,* 110 Md. 667; *Levin* v. *Hewes,* 118 Md. 624; *Painter* v. *Mattfeldt,* 119 Md. 466.

The title of the Act of 1902 is,

> "An Act regulating the loan of money, when, as security for such loan, a lien is taken upon household furniture and effects, musical instruments, typewriters and sewing machines, in use or located in any dwelling house, by repealing and re-enacting with amendments section 7 of Article 49 of the Code of Public General Laws, title 'Interest and Usury,' as the same was re-enacted by Chapter 404 of the Acts of the General Assembly of Maryland, passed at its January Session in the year 1900."

The body of the Act provides that "It shall not be lawful for any individual, partnership, association or corporation lending money within the limits of this State, and taking as

security for the re-payment thereof, a lien upon any house-hold furniture and effects, musical instruments, typewriters and sewing machines or any other personal chattels," etc. The title of the Act advised the Legislature and the people of the State that the Act only regulated loans of money secured by liens "upon household furniture and effects, musical instruments, typewriters and sewing machines," *in use or located in any dwelling-house,* while the Act includes not only *all* personal property of the kinds named, whether in use or located in a dwelling-house or not, but "any other personal chattels." The Act therefore falls clearly within the condemnation of the cases referred to as disregarding the object and purpose of the constitutional provision in question.

In *Luman's Case* the Act, under the title, "An Act to prohibit railroad and mining corporations, their officers and agents from selling or bartering goods, wares or merchandise in Allegany County to their employees," provided in its first section, "That it shall not be lawful for any railroad or mining corporation, doing business in Allegany County, nor for the president, vice-president, manager, superintendent, any director or other officer of such corporation, to own or have any interest in any general store or merchandise business in Allegany County, in which goods, wares and merchandise are sold, nor to conduct or carry on any such business, or have any interest in the profits of the same in Allegany County, nor to sell or barter any goods, wares or merchandise in such county." In holding that the Act violated the provision of the Constitution we are now considering, the Court, speaking through CHIEF JUDGE McSHERRY, said: "The *title* relates to sales to *employees;* the body of the Act prohibits railroads and mining corporations from selling at all; and it also, without qualification, prohibits the designated officers from having any interest in any store, and from selling to *any* person any goods, wares or merchandise in the county. The title indicates that the Act is designed to provide a restricted prohibition, whilst the body of the Act

declares an unrestricted prohibition. A provision forbidding a sale to employees is widely different from, because much narrower than, a provision forbidding a sale to any one. Though the title need not contain an abstract of the bill, nor give in detail the provisions of the Act, it must not be misleading by apparently limiting the enactment to a much narrower scope than the body of the Act is made to compass; nor must there be cloaked in the enactment any foreign, discordant or irrelevant matter not disclosed in the title. No one reading a title which was confined to a prohibition against particular persons selling to their *employees* would ever infer that the thing actually prohibited in the Act itself was a sale by those persons to *any* one."

It is suggested by counsel for the State that the title of the Act of 1902 should be so construed as to limit the restriction "in use or located in any dwelling-house" to typewriters and sewing machines, and that that construction would make the Act operative as to "household furniture and effects, musical instruments." The undoubted rule is as stated by Chief Judge Boyd in *Somerset Co.* v. *Pocomoke Bridge Co.,* supra, and repeated in a number of the cases referred to above; "that it is not necessary, or proper, to strike down an entire Act because one provision is void, 'unless the provisions are so connected together in subject-matter, meaning or purpose, that it cannot be presumed the Legislature would have passed the one without the other;' " and that the same principle applies "to cases in which the valid and void provisions" are in the same section of the Act. But assuming that this rule is applicable to the Act of 1902, it can not be invoked to support the first count in the indictment which charges the accused with having taken the lien upon *all* the articles mentioned in the Act. A traverser ought not to be required to answer a count containing some good charges and others upon which there could be no conviction. This principle is recognized in the case of *Avirett* v. *State, supra,* where the Court held that the accused had a right to have a bad count elim-

inated before trial on an indictment containing another and good count.

It was also suggested by the State, upon the authority of *Benzinger* v. *State,* 83 Md. 481, that if the Act of 1902 was unconstitutional, the provision thereof repealing the Act of 1900, Chapter 404, would also fall and leave the latter Act in force, under which the first count in the indictment could be sustained.   But even if we were to hold that the whole Act of 1902 is bad, which we are not to be understood as deciding, a reference to the Act of 1900 would show that it provides only for loans secured by chattel mortgages, and that the language of the first count does not bring the offense charged within its provisions.

The conclusion we have reached in regard to the Act of 1902 is probably not important since it was repealed and re-enacted by the Act of 1912, Chapter 835, which makes provision for the wrongs which the Acts of 1900 and 1902 were intended to prevent.

As the first count is defective for the reasons stated, it is not necessary to consider the other questions discussed by counsel.

*Judgment affirmed.*