# BELL *v.* BOARD OF COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY

[No. 119, October Term, 1949.]

22

*Decided April 12, 1950.*

The cause was argued before MARBURY, C. J., and COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Robert W. McCullough* and *Willis R. Jones*, for appellant.

*Jerrold V. Powers*, with whom was *Robert B. Mathias* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

The question involved in this case is the constitutionality of Chapter 753 of the Acts of 1949, which provides for the licensing of coin operated mechanical or electrical amusement devices or machines in Prince George's County. This act was subject to a referendum, which was had, and a majority of those voting at the election approved it. Subsequently, a certain Hendricks filed a bill of complaint in the Circuit Court for Prince George's County, stating that he was a resident of Montgomery County, and that his corporate co-plaintiff, of which he was the principal stockholder, was a Maryland corporation, having its principal office in Baltimore City. These complainants stated that they had been engaged in the business of operating amusement devices in Prince George's County for the past fourteen years in about 25 separate locations, with approximately 50 machines varying in price from $200 apiece to $900 apiece. They showed that the act restricted the issuance of operators' licenses to registered voters and property owners of Prince George's County, and alleged that this was an unlawful discrimination. They, therefore, asked that the sub-section complained of be declared void. The County Commissioners were made defendants to this

bill and filed an answer and demurrer. There was a hearing on the bill at which some testimony was taken, and, thereafter, the Chancellor, Judge Charles C. Marbury, filed an opinion in which he held that the entire act was void. A decree was signed so holding, and enjoining the County Commissioners from issuing any licenses under the statute. No appeal was taken in that case.

Later, the present appellant filed a petition against the County Commissioners, stating that he was a resident of Prince George's County and qualified under Chapter 753 to obtain a license, that he had made formal application to the County Commissioners, that the latter had denied his application, that he was not a party to the Hendricks proceeding, and he asked for a writ of mandamus directed to the County Commissioners, commanding them to receive and pass upon his application. The Commissioners answered, setting up the unconstitutionality of the statute and the decree in the Hendricks case as their defense. The appellant demurred to the answer, the case was submitted on the pleadings and the Chancellor overruled the demurrer, dismissed the petition for mandamus, and entered judgment in favor of the Commissioners for costs. From this order the case is appealed here.

It is suggested by the Commissioners that not only are they bound by the decree in the Hendricks case, but that the appellant is also bound because he is one of a class vitally interested in that case. Class suits are, of course, well known methods by which taxpayers sue for themselves and others, similarly interested, who may come in, but the principle of res judicata extends further than such other taxpayers. It is a familiar principle that if a party is interested in the subject matter of a suit and knowingly allows it to be pursued to a final decree without intervening or participating in the proceedings, he may be bound by the result. *Snavely v. Berman*, 143 Md. 75, 121 A. 842; *Rody v. Doyle*, 181 Md. 195, 29 A. 2d 290. The doctrine has been applied where

the question involved is the same and the rights of the parties are similar, even though the second plaintiff did not know of the action taken by the first. *Holt v. Moxley*, 157 Md. 619, 147 A. 596. A discussion of the general subject may be found in the case of *Leviness v. Consolidated Gas, Electric Light & Power Co.*, 114 Md. 559, 80 A. 304, Ann. Cas. 1913C, 649. The record before us does not contain the bill of complaint in the Hendricks case, but the Chancellor, in his opinion in that case, set out the chief allegations. From these it appears that the non-resident plaintiffs desired to strike down that part of the act which prohibited licenses from being granted to them. The appellant in the case before us is a resident who claims he is qualified under the act, and his position is that the entire act should be upheld. The rights of the parties in these two cases are not only not similar, but are even antagonistic, and we do not think the appellant is bound by the Hendricks case.

The basis for the decision in the Hendricks case was that the title of Chapter 753 violated Section 29 of Article 3 of the Constitution, which provides that every law "shall embrace but one subject, and that shall be described in its title". The title of Chapter 753 is as follows: "An Act to add eight new sections to the Code of Public Local Laws of Prince George's County (1943 Edition being Article 17 of the Code of Public Local Laws of Maryland), title 'Licenses' to be under a new sub-title 'Amusement Devices', said new sections to be known as Sections 951A-951H and to follow immediately after Section 951 of said Code, relating to the licensing of coin operated mechanical or electrical amusement devices or machines in Prince George's County and providing for a referendum thereon at a special election to be held in said county."

Section 951A of the Act reads as follows: "Nothing contained in Article 27, Section 288 to 307, inclusive, of the Annotated Code of Maryland (1939 Edition), title 'Crimes and Punishments', sub-title 'Gaming', shall be construed as prohibiting, penalizing or making unlawful

the keeping, maintenances, operation or distribution for operation, for public use in Prince George's County, by any person or partnership, on and after this sub-title becomes effective, of any mechanical or electrical amusement devices, which require the insertion of a coin or token for their operation and which offer an award to the player based in whole or in part upon chance or skill, provided that the necessary licenses as provided in this sub-title are procured; and provided further, that nothing in this sub-title shall be construed as making lawful the possession, maintenance or use of the upright side lever operated slot machine commonly called the 'one armed bandit', it being the intent to exclude said devices from the following licensing provisions. * * *" This section makes lawful the licensed use of amusement devices which require the insertion of a coin or token and which offer an award to the player based in whole or in part upon chance or skill. In other words, under the statute, there is nothing to prevent the proprietor of an establishment where these devices are set up from "paying off" when a player is lucky enough to hit a winning number or reach a winning total. It is possible, of course, that these machines can be used for innocent amusement, but it would be a naive person indeed who would suppose that is their main purpose, or the way in which they are generally operated. Where the gaming laws are in force, the difference between innocent operation and criminal operation is such "paying off". We have recently upheld a conviction of the proprietor of a tavern who did that. In that case there is a discussion of how one of these amusement devices is operated as a gambling machine. *Hunter v. State*, 193 Md. 596, 69 A. 2d 505. A further rather complete discussion of how some classes of these machines are operated is found in the opinion of Chief Judge Bond in *Hoke v. Lawson*, 175 Md. 246, 1 A. 2d 77. See also *Gaither v. Cate*, 156 Md. 254, 144 A. 239.

It has been held in a number of cases where there is a question of confiscation by the police, that those ma-

chines which may be used for a legal as well as for an illegal purpose cannot be taken away. *Police Commissioners* for *City of Baltimore v. Wagner,* 93 Md. 182, 48 A. 455, 52 L. R. A. 775, 86 Am. St. Rep. 423; *Wagner v. Upshur,* 95 Md. 519, 52 A. 509, 93 Am. St. Rep. 412; *Soper v. Michal,* 123 Md. 542, 91 A. 684, L. R. A. 1915A, 232; *Penny v. Maryland State Police,* 186 Md. 10, 45 A. 2d 741. In the last case, which did not have to do with such machines, the statement in the previous cases was repeated; namely, that only such property or articles as are intended to be used in violation of law, and can be used for no legitimate purpose, can be summarily seized by the police authority. That, however, is not the question here. We must determine whether a provision in the title for licensing amusement devices or machines sufficiently describes the intention of the act, which is to permit such machines to be used for gambling purposes.

Section 29 of Article 3 of the Constitution has been invoked in many cases in this Court. The general rule of its construction is that every presumption favors the validity of the statute, and reasonable doubt is enough to sustain it. *McGlaughlin v. Warfield,* 180 Md. 75, 23 A. 2d 12. The purpose of the provision, which has been inserted in the last three Constitutions, is to assist the members of the Legislature in finding out the nature of the bills, usually read to them by their titles only, and in watching their course intelligently, and also to inform the citizens of the State generally about the proposed legislation, and to give them an opportunity to appear before the committees of the Legislature. *Neuenschwander v. Washington Suburban Sanitary Commission,* 187 Md. 67, 48 A. 2d 593. The cases may be generally divided into those in which it is claimed the title is not sufficiently descriptive, and those in which it is contended that the title is misleading. Most of the cases come within the first class, and it has been generally held that any substantial compliance will result in sustaining the act. In the second class, however, where there is an apparent

opportunity for misleading the members of the General Assembly and the public, the Court has not hesitated to strike down many acts. Thus in *Scharf v. Tasker*, 73 Md. 378, 21 A. 56, in an opinion delivered by Judge McSherry, the Court struck down a statute which by its title apparently provided for the selling of certain unclaimed military lots in Allegany and Garrett Counties for taxes. The body of the act repealed a provision of the general law which gave the Commissioner of the Land Office certain fees for making searches and furnishing copies of the record in his office. The Act provided that no charge should be made for these searches. The Court said that the proposed or attempted repeal was in no sense germane to the subject matter, and that the Act was bad. In *State v. Schultz Co.*, 83 Md. 58, 34 A. 243, the title of the act stated that it provided for the payment by every newly incorporated company of a bonus on its capital stock. In the body of the act it was provided that whenever any company heretofore incorporated should increase its capital stock, a bonus on the amount of the increase must be paid. The Court said that to use the words "newly created" in the title diverted attention from the matter contained in the body of the statute relating to corporations then existing, and that the title was misleading. In *Luman v. Hitchens Brothers Co.*, 90 Md. 14, 44 A. 1051, 1052, 46 L. R. A. 393, the title of the statute prohibited railroad and mining corporations, their officers and agents, from selling or bartering goods, wares or merchandise in Allegany County to their employees. The body of the act made it unlawful for any officer of such corporation to own or have any interest whatever in any store or merchandise business in the County without the slightest reference whether sales were made to the employees or not. The Court, speaking through Judge McSherry, said "Though the title need not contain an abstract of the bill, nor give in detail the provisions of the act, it must not be misleading by apparently limiting the enactment to a much narrower scope than the body of the act is made

to compass; nor must there be cloaked in the enactment any foreign, discordant or irrelevant matter not disclosed in the title." In *Kafka v. Wilkinson*, 99 Md. 238, 57 A. 617, 619, the title provided simply for the repeal and re-enactment of certain sections of the Code, title "Corporations", sub-title "Insurance", the adding of an additional section and the repealing of another section. The body of the act not only added one additional section, but added two. This second additional section prohibited the appointment of a temporary or permanent receiver for any domestic insurance company other than upon complaint or other proceeding instituted by the insurance commissioner. This the Court held was legislation of a most important character, of which the title not only gave no notice but sought to divert attention from it, and said "If this shall be sanctioned, an easy means will be afforded to escape and avoid the effect of the constitutional provision in question." And "Thus there would be the opportunity for foisting upon any Act of Assembly matter of legislation of which neither the Legislature nor the public would have any notice." In *Christmas v. Warfield*, 105 Md. 530, 66 A. 491, the act repealed and reenacted an act which authorized the Board of Public Works to collect insurance upon two state tobacco warehouses, and to rebuild a modern warehouse or resell the site and build a tobacco warehouse in some other locality in the City. The title restricted the act to such repeal and re-enactment. The second section of the act established a governmental agency distinct from the Board of Public Works, and authorized it to rebuild a large and equipped warehouse and to build on the site of certain other warehouses a modern house. The Court held that the title was so insufficient and misleading as to be obnoxious to Section 29 of Article 3. In *Nutwell v. Com'rs. of Anne Arundel County*, 110 Md. 667, 73 A. 710, the title of the act stated that it added two new sections to the Code of Public Local Laws of Anne Arundel County, so as to require *all* owners of vehicles to have a license. In the

body of the act ox-carts, horse carts, farm wagons and milk wagons were exempted. The Court held the act void. In *Painter v. Mattfeldt*, 119 Md. 466, 87 A. 413, the act provided for the construction of an improved system of roads and bridges in Baltimore County and for the issuance of bonds in the amount of $1,500,000. The title indicated that the ways and means for the construction and improvement of the roads were to be provided by the bond issue which was to be a lien upon the assessable property of the County. In the body of the act there was what the Court called a great and indefinite liability in excess of the amount of the bond issue, and the Court held that the title was misleading and the act void. In *State v. King*, 124 Md. 491, 92 A. 1041, the title was for the regulation of loans secured by liens upon certain chattels "in use or located in any dwelling-house". Laws 1902, c. 208. The body of the act provided for loans not only on all personal property of the kinds named, whether in use or located in a dwelling house, or not, but also included any other chattels. The title was held bad. In *Weber v. Probey*, 125 Md. 544, 94 A. 162, the title of the act authorized the municipal authorities of Mount Rainer to issue bonds and levy taxes. The body of the act contained a provision that there should be front foot assessments against property to pay the bonds. The Court held the title misleading, and struck down the entire act. In *Quenstedt v. Wilson*, 173 Md. 11, 194 A. 354, the act created an office of Justice of the Peace at large for Prince George's County, giving him criminal jurisdiction to the exclusion of all other justices of the peace. The motor vehicle statute provided that where any person was taken into custody for its violation, he should be forthwith taken before the nearest justice of the peace. The title to the act made no provision for this change in the general law. The Court held the act invalid.

It is true that in some cases where the title is more restricted than the act, if it is possible to confine the operation of the act to the restriction, that will be done

in order to preserve the act. Illustrations of this are found in *Buck Glass Co. v. Gordy,* 170 Md. 685, 185 A. 886, and the recent case of *Brooklyn Apartments v. Mayor and City Council of Baltimore,* 189 Md. 201, 55 A. 2d 500. In other cases, only a portion of the act has been stricken down, because of a misleading title. Such cases are *Stiefel v. Maryland Institute for the Blind,* 61 Md. 144; *Whitman v. State,* 80 Md. 410, 31 A. 325; *Somerset County Com'rs. v. Pocomoke Bridge Co.,* 109 Md. 1, 71 A. 462, 16 Ann. Cas. 874; and *Curtis v. Mactier;* 115 Md. 386, 80 A. 1066. Neither of these methods can be used in the case before us to save the statute. It is obvious that its intention is to permit gambling in Prince George's County by the machines mentioned. That is shown by the wording already quoted from Section 951A, and by the amount of the licenses required, which obviously would not be paid unless the machines were to be used for more than mere amusement, without hope of financial reward. It is true that the act contains a provision that if any section or part of a section is held invalid, the remainder could be held valid, because of the legislative intent that the remainder should stand notwithstanding the invalidity or elimination of the invalid sections. That clause, however, although somewhat differently worded than the usual separation clause, adds nothing to the general rule that courts try to uphold all parts of an act which can be put in force, even though other parts are invalid. This act, however, is so integrated and so obviously for one purpose only, that we do not think any of it can be kept in force if the gambling section is held invalid.

We come, therefore, to this section and it seems to us perfectly clear that when such a marked change is being made in the gaming laws of the State, the Legislature and the people, not only of Prince George's County, but of all the other counties in the State, must be given notice of it by something in the title to the proposed statute. Slot machines, pinball machines, claw machines and all the other various kinds of machines which are

used for gambling purposes, have been before this Court many times, and have been discussed in the various cases we have referred to. At one period where it was necessary to raise revenue for aid to the needy, the Legislature provided for a state-wide licensing of similar machines (1937 Extra Session, Chapter 11, Section 6), but that act required the rewards to be paid in merchandise only and prohibited the licensing of machines the successful operation of which depended solely on chance. That statute was subsequently repealed (Acts 1939, Ch. 277, Sec. 8), and the policy of the State reverted to prohibition of the use of such instrumentalities. When the Legislature undertakes to change that general policy, with respect to a particular locality, it is a matter of interest to the people of the entire state, as well as to the citizens of the county specially affected, and it is a matter of interest to the representatives in the Legislature, not only of that particular county, but of the entire State. That was clearly indicated by the Governor in 1947 when he vetoed ten local acts legalizing gambling in six of the counties of the State. He said in part: "This legislation indicates a marked growth in the effort to spread gambling in various forms over the State. Instead, however, of proposing any change in the existing State policy, these bills propose to extend gambling, in some instances by election districts and in others, county by county, with the revenues going either to the county or to some educational, charitable, fraternal or benevolent purpose in the county. I believe that the total of these proposals proves that it is unwise for the State to permit such matters to be handled on a county level entirely. The State has an interest in such matters which can not be avoided or ignored. If gambling is to be authorized county by county it will not be long before the entire State will be a haven and a paradise for gamblers and gambling devices."

The purpose, as we have shown, of the provision in the Constitution, is to give notice generally, and so long as it remains in the Constitution, it must be obeyed. It

34

is no answer to a failure to obey to say, as does the appellant in this case, that the act was subject to a referendum, that it was widely discussed in newspapers circulated in the County affected, and that there was an active campaign for and against its adoption. The requirement for a referendum does not affect the question of notice and does not cure a defective title. *Weber v. Probey, supra, Culp v. Commissioners of Chestertown,* 154 Md. 620, 141 A. 410. Indeed, the election does not seem from the record to have been one of widespread interest, as the total votes cast according to the petition for mandamus were 11,730, while at the election in November, 1946, the total votes for Governor in Prince George's County, were 22,916 and that for Congressman, 22,502. This, however, is beside the point, which is that the draftsman of a proposed act must not give it a title which misleads those reading it as to the contents of the body of the proposed enactment. The courts cannot be required to examine into the question what portion of the people were actually misled. The question is, on the face of the title and on the face of the act, whether there is a probable deceit. We find that there was in the case before us, and, therefore, the statute cannot stand.

*Order affirmed with costs.*