the plaintiff McManus that he had," the word "some," and striking out the words "such a" before the word "plan." XX. By striking out all after the word "situation." LIX. By striking out all after the word "Archer." LX. By striking out all after the word "indebtedness" before the word "stating."

The following conclusions of law are also reversed: I to XIII, inclusive.

The following findings of fact proposed by plaintiffs are hereby found: 8, 9, 10, 13, 19, 21, 22, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 46, 47, 47½, 51, 52, 53, 58, 59, 62, 64, 68, 72, 73, 74, 75, 78, 79, 80, 88, 94, 96. And the following conclusions of law: 2, 5, 6, 7, 8, 10, with a final conclusion that plaintiffs are entitled to judgment against the defendant Howard M. Durant that he account to them for the profit realized upon the sale of plaintiffs' stock in the St. Gabriel Lumber Company by him.

Costs of the appeal and of the trial are awarded to plaintiffs as against Durant. Judgment affirmed, with costs, as to respondents Sheldon and Prentice, and as to defendant Durant reversed, with costs, and judgment directed in favor of plaintiffs as stated in opinion. Settle order on notice.

CLARKE, SCOTT, and HOTCHKISS, JJ., concur. INGRAHAM, P. J., dissents.

---

GRANT et al. v. GREENE CONSOL. COPPER CO. et al.  (No. 7546.)

(Supreme Court, Appellate Division, First Department.  July 9, 1915.)

1. JUDGMENT ⊜⇒15—LACK OF JURISDICTION—DISMISSAL OF ACTION.
    Where a court has no jurisdiction of an action, it can render no judgment other than one dismissing the complaint.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 22, 23; Dec. Dig. ⊜⇒15.]

2. CORPORATIONS ⊜⇒665—LACK OF JURISDICTION—CURE BY SUBSEQUENT STATUTE.
    Where the court in which a stockholder's action was brought against a foreign corporation had no jurisdiction of the action under the statute because of the nonresidence of the plaintiff, and judgment dismissing the complaint was entered before an amendment to the statute went into effect giving jurisdiction in such cases, such amendment could not overturn the judgment and validate proceedings of which the court had no jurisdiction.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2571, 2573, 2595–2600; Dec. Dig. ⊜⇒665.]

3. CORPORATIONS ⊜⇒665—JURISDICTION—INTERVENTION OF RESIDENT PLAINTIFF.
    Where a nonresident stockholder sued a foreign corporation for himself and all other stockholders, the court, under the statute regulating the matter, having no jurisdiction because of plaintiff's nonresidence, and thereafter a resident stockholder intervened in the suit as plaintiff, such intervention gave the court jurisdiction of the action, since, from the time the resident stockholder was admitted to intervene, the jurisdiction invoked was as much in her behalf to protect her individual interests as in behalf of the original nonresident plaintiff.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2571, 2573, 2595–2600; Dec. Dig. ⊜⇒665.]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. JUDGMENT ⬛⟹701—RES JUDICATA—STOCKHOLDER'S SUIT.

The decree in a stockholder's suit against a corporation binds all other stockholders as to the issues determined, whether the action purported to be brought in behalf of all other stockholders or not, as such stockholders would be bound on a judgment involving similar issues against the corporation itself, since a stockholder's action is merely derivative, no stockholder has the right to sue for himself alone, and his action is necessarily representative, whether he calls it so or not; any judgment therein, the corporation being a party, binding all stockholders.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1226; Dec. Dig. ⬛⟹701.]

5. JUDGMENT ⬛⟹587—RES JUDICATA—IDENTITY OF ISSUES—STOCKHOLDER'S SUITS.

Where a stockholder of a mining corporation sued another such corporation, alleging that the original owner of the mining properties involved organized plaintiff's corporation to operate the mines, and thereafter, becoming dissatisfied with certain officers of such corporation, ousted them, and organized defendant corporation, transferring to it plaintiff's corporation's property, continuing to operate the mines through defendant corporation, and excluding plaintiff and other stockholders of the original company from participation in dividends, the theory of plaintiff's action being that the transfer of his corporation's property to the defendant corporation was a fraud on the former's stockholders, giving rise to a constructive trust for their benefit, a judgment for defendant was conclusive in a suit by another stockholder alleging the same facts, but predicating his action on the theory that the transfer of the property to the defendant corporation was on behalf of the plaintiff's corporation, so that defendant took the property subject to an express trust; the only difference between the actions being in their legal theory, the facts being the same.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1089; Dec. Dig. ⬛⟹587.]

Appeal from Special Term, New York County.

Action by James A. Grant and Nettie L. Grant against the Greene Consolidated Copper Company and the Cananea Consolidated Copper Company, impleaded, etc. Judgment dismissing the complaint on the merits, and plaintiffs appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Walter B. Raymond, of New York City (Victor C. Cormier, of New York City, on the brief), for appellants.

James Byrne, of New York City (F. W. M. Cutcheon and M. E. Harby, both of New York City, on the brief), for respondents.

HOTCHKISS, J. Under an order directing certain issues raised by the answer to be tried first, defendants have secured a judgment dismissing the complaint on the merits, and plaintiffs appeal. The issues so tried were: First, whether or not the plaintiffs, or either of them, were at the time of the beginning of the action resident of the state; and, second, whether or not the judgments set up in the thirteenth, fourteenth, fifteenth, and twenty-fifth defenses were in fact made, and, if so, whether they or any of them are res adjudicata of the issues herein.

The action is a representative one, brought by plaintiffs, as stockholders of defendant Cobre Grande Copper Company of Arizona, to have defendant the Cananea Company, a Mexican corporation, of which defendant Greene is president, adjudged to be the holder in trust for the benefit of the Cobre Company of certain Mexican mines and mining properties, and to compel the Cananea Company and Greene, together with the Greene Consolidated Company, a West Virginia corporation, of which Greene is also president, to account to the Cobre Company and to the plaintiffs for income and proceeds arising from the use and operation of the mines and properties in question. The substance of the complaint is as follows:

About November 26, 1898, Greene contracted to convey to one Mitchell certain mines and properties located in Mexico in consideration of $12,500 in cash and the further sums of $37,500 to be paid on November 26, 1899, and $100,000 on November 26, 1900, and $100,000 on November 26, 1901. At the time of executing this agreement, Greene executed deeds conveying the properties to Mitchell and delivered the deed in escrow to the Phœnix Bank of. Phœnix, Ariz., for delivery to Mitchell upon his complying with the agreement. Mitchell paid to Greene the $12,500 in cash and entered into possession of the mines and properties, which he worked and operated in accordance with the terms of the agreement, and in conjunction with Greene, who had a Mexican license to operate mines in the "neutral zone" in which the properties were located, began the work of developing the properties and erecting machinery for that purpose. Thereupon Greene and Mitchell entered into a copartnership called Mitchell, Greene & Co. for the development and working of the mines covered by the Greene-Mitchell agreement, and continued to work and develop the same, operating under the Mexican license to Greene, until about April 25, 1899, when the Cobre Company was incorporated, and thereupon Mitchell, in consideration of the transfer to him of all but five of the 200,000 shares of the capital stock of that company, transferred to it all his right, title, and interest in the said properties acquired from Greene under the contract of November 26, 1898. On July 22, 1899, Greene executed and delivered to the Cobre Company an agreement ratifying the agreement of November 26, 1898, and consenting to the transfer by Mitchell of all of the properties therein described to the Cobre Company, and in addition Greene also transferred to the Cobre Company other mines and claims contiguous to the mines and properties conveyed to it by Mitchell. Greene, however, continued to hold the legal title to the properties covered by the agreement of November 26, 1898, in trust for the Cobre Company, which, being an Arizona corporation and having no Mexican license, was unable to operate said properties. On July 24, 1899, Greene conveyed to the Cobre Company the Elisa mine, adjacent to the properties previously conveyed, and accepted from the Cobre Company in full payment four notes, of $25,000 each. In the meantime one Costello had become president of the Cobre Company, one Wood its secretary and treasurer, and one O'Keefe its Mexican manager.

Greene, Mitchell, and one Treadwell, who were directors of the

Cobre Company, had become dissatisfied with the management of its other officers, and began negotiations with one Addicks and one Lawson for the purpose of securing funds to pay the debts and protect the properties of the Cobre Company. As a result of these negotiations it was arranged to oust Costello, Wood, and O'Keefe from the Cobre Company, and to organize a new Mexican company to take over and operate the properties, and also to organize a holding company to take over the stock of the other companies, the necessary funds to be advanced by Addicks and Lawson. On September 23, 1899, Greene, Mitchell, and Treadwell, as directors of the Cobre Company, held a meeting, declared the previous election of Costello and Wood to be void, and proceeded to fill the vacancies so created by electing Greene as president, White, an employé of Greene, as secretary and treasurer, and Chase, an attorney associated with Logan, Greene's attorney, as a director, and also voted to oust O'Keefe as manager. Greene, acting as its president, and Treadwell, as its vice president, took possession of the properties, including a large amount of extracted copper ore and ore which had been shipped to the smelters, in the interest of the Cobre Company, and thereupon, pursuant to the arrangement with Addicks and Lawson, Greene and Chase proceeded to organize the defendant Cananea Company to take title to the said properties, and on or about October 11, 1899, Greene executed an agreement whereby he undertook to transfer to the Cananea Company all the mines and properties of the Cobre Company, including the Elisa mine, which conveyance the Cananea Company accepted with full knowledge of and subject to all the rights of the Cobre Company and its stockholders. The entire capital stock of the Cananea Company, except seven shares to qualify directors, was issued to Greene, and the Cananea Company immediately entered into possession of all the properties of the Cobre Company, and has ever since continued to operate the same.

Pursuant to the arrangement with Addicks and Lawson, Greene, Mitchell, Treadwell, Barnes, and Logan organized the Greene Consolidated Company, with a capital of $5,000,000, as the holding company, with Greene, Mitchell, Treadwell, and Logan as its directors and officers; the object of such organization being to take over and hold a majority of the shares of the Cobre Company and all the stock of the Cananea Company, except shares necessary to qualify directors. Upon the organization of the Greene Company all of the stock, except as aforesaid, was by Greene turned over to the Greene Company, which transfer enabled the Greene Company to control the Cananea Company and the operation of the said mines and properties, from the proceeds of which it has distributed upwards of $4,000,000 in dividends. Upon the organization of the Greene Company, Greene on its behalf offered to all stockholders of the Cobre Company the privilege to exchange their stock in that company for the stock of the Greene Company share for share, the purpose of such offer being to obtain a majority of the shares of the Cobre Company and thus control its affairs, which purpose having been accomplished by the exchange of sufficient shares, the offer to exchange was withdrawn, and the right of the plaintiffs and other minority stockholders of the Cobre

Company to participate in the earnings of that company was denied by Greene, the Greene Consolidated Company, and the Cananea Company.

It was further alleged that all of the payments provided for under the agreement of November 26, 1899, between Greene and Mitchell, were duly made, and all of the conditions of that agreement performed, save so far as they were waived, all of which payments and conditions incident to the performance of said contract were paid from the funds of and performed by the Cobre Company, or upon a pledge of its credit and properties. The operation of the mining properties by the Cananea Company has been exceedingly profitable, and as the result large sums have been divided as dividends among the stockholders of the Greene Company, and plaintiffs and other stockholders of the Cobre Company have been wholly excluded from participation in such profits.

For relief, plaintiffs in substance pray that the Cananea Company be decreed to hold in trust for the Cobre Company all of the aforesaid properties, and that Greene, the Cananea Company, and the Greene Company be required to account for all profits secured from the operation of said properties.

This action was commenced October 8, 1906, by personal service on all save the Cobre Company, as to which the summons was published. The action was originally commenced by James A. Grant, but by order of December 8, 1906, Nettie L. Grant, also a stockholder of the Cobre Company, was permitted to intervene and become a plaintiff, the action to proceed without prejudice to the proceedings already had, and in the same manner and with the same force and effect as if she had been an original party.

[1] The question of jurisdiction is the first to be considered, for, if the court had no jurisdiction, it had no power to render any judgment other than one dismissing the complaint. Clark v. Scovill, 198 N. Y. 279, 284, 91 N. E. 800. The court found that at the time the action was commenced James A. Grant was not a resident of this state and that on the date of the entry of the order of intervention Nettie L. Grant was a resident of this state; that the Cobre, Greene Consolidated, and Cananea Companies were all foreign corporations; that all of the allegations of the complaint related to contracts, acts, and matters entered into, performed, and taking place outside of the state of New York; and that none of the property on account of which the plaintiffs prayed an accounting was real property or chattels within this state. The court also found that it was without jurisdiction to grant any relief to plaintiffs. This finding involves the conclusion that, if James A. Grant was a nonresident when the action was commenced, jurisdiction was not conferred by the intervention of his mother, Nettie. If the court was wrong in this proposition, it will be unnecessary to determine whether it was right in holding that James A. Grant was a nonresident. The question of jurisdiction is determined by section 1780 of the Code of Civil Procedure. This section was amended September 1, 1913, by adding a provision conferring jurisdiction in actions brought by a nonresident or by a foreign corporation against a foreign

corporation "doing business within this state." The plaintiff claims that this amendment was retroactive, and that, inasmuch as the Greene Company (the company sought to be charged as de facto trustee and compelled to account) was doing business in this state, jurisdiction was conferred by the amendment.

[2] The judgment appealed from was entered July 10, 1913, nearly two months before the amendment took effect. Had the amendment become effective before judgment, the situation would present an entirely different question from the one before us; but, inasmuch as judgment had been entered before the amendment took effect, there can be no doubt that the amendment could not overturn the judgment and validate proceedings of which prior to that time the court had no jurisdiction. Nor can there be any question about the constitutionality of section 1780 as it stood before the amendment. So far as this court is concerned, that question was set at rest by Johnson v. Victoria Chief, etc., Co., 150 App. Div. 653, 135 N. Y. Supp. 1070.

[3] In support of their claim that jurisdiction was not conferred by the intervention of Nettie L. Grant, the respondents make two points: (1) That in order to maintain the action it was necessary that all the parties plaintiff should have been citizens and clothed with the right to sue at the time the action was commenced; and (2) that jurisdiction could not be conferred nunc pro tunc. I think the question of jurisdiction must be determined against the respondents. If the cause of action were one vested jointly in the two parties plaintiff, the respondents would doubtless be right, and possibly this principle would extend to a case where the resident plaintiff was a necessary party to the action originally brought by the nonresident. The authorities cited by the respondents go no further than to hold that in one or both of the above situations all the parties plaintiff must be clothed with the attributes of jurisdiction.

The principal case relied on is Paget v. Stevens, 143 N. Y. 172, 38 N. E. 273. The action arose in the Common Pleas, and jurisdiction depended upon the fact of residence. The object of the action was to remove two trustees of a trust created under a will. Each of the plaintiffs was a necessary party to the action, and one of them was a nonresident. The court held that the residence of the other was not sufficient to confer jurisdiction. Neither James A. Grant, the original plaintiff, nor any other stockholder of the Cobre Company, had in himself alone any individual right of action; but whatever right of action existed was vested in all or any of the stockholders who might choose to sue. When James brought his action, it was not in his own behalf alone, but as well in behalf of all other stockholders similarly situated, and it necessarily follows that, from the time that Nettie L. Grant was admitted to intervene and became a party to the action, the jurisdiction invoked was as much in her behalf in the protection of her several and individual interests as it was in behalf of the original plaintiff, James. Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663. Possibly, had the objection to jurisdiction been raised when Nettie L. Grant sought to intervene, it might have been fatal, and the order of intervention could not have been properly granted. But, after intervention had been allowed, Mrs. Grant became a party in her own sepa-

rate right, and she was clothed with the attributes of citizenship necessary to confer complete jurisdiction of the action. Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663.

Although I have been unable to find any authority directly in point, on principle and analogy, the cases sustain the view I express. It has long been settled that in representative actions a sole plaintiff has the right to control the action or to compromise or discontinue it at pleasure, and this continues until some individual with like interest in the cause of action has been admitted as a party, whereupon the exclusive right of the original plaintiff to prosecute, control, or discontinue the action ceases, and the cause proceeds in the right and for the benefit of such intervening plaintiff as if he had been an original party. Hirshfeld v. Fitzgerald, 157 N. Y. 166, 51 N. E. 997, 46 L. R. A. 839. In Hanna v. Lyon, 179 N. Y. 107, 71 N. E. 778, plaintiff sued as a stockholder in behalf of himself and all other stockholders. It appeared that Hanna, the plaintiff, had ceased to be a stockholder before the action was commenced, but Piza, a stockholder, had been admitted as a party plaintiff. The trial court gave judgment for the plaintiffs, which judgment was reversed by the Appellate Division, and the complaint dismissed. The Court of Appeals reversed as to Piza, holding that by his admission as a party plaintiff he became entitled to prosecute the action.

Stewart v. Dunham, 115 U. S. 61, 5 Sup. Ct. 1163, 29 L. Ed. 329, was a creditor's bill, on behalf of the complainant and all others similarly situated, originally brought in the state court and removed. Jurisdiction originally depended upon diverse citizenship. Some time after the action was commenced creditors who were citizens of the same state as the defendants were admitted as coplaintiffs, and it was held that this did not oust the court of jurisdiction. It is true that in that case jurisdiction attached originally; but the principles on which the court held that jurisdiction continued are such as to my mind are applicable here. For these reasons I think the court had jurisdiction of the action.

It thus becomes necessary to review the judgment dismissing the complaint on the merits. This involves a determination of the effect of the prior judgments pleaded in bar. The judgments in question are four in number, each of which, the court below held was a bar to this action:

(1) In the New York Supreme Court suit of Hollenborg v. Greene et al., entered upon the decision of Joline, referee. This was an action by Hollenborg as a stockholder and creditor of the Cobre Company, and in its general features at least was similar to the present action. The Greene, Cananea, and Cobre Companies, together with Greene, Mitchell, and others, were named as defendants.

(2) In the Texas action, brought by the Cobre Company to enjoin the Kansas City Smelting Company from paying over to the Cananea Company, to Mitchell, or to the Consolidated National Bank of Tucson, the proceeds of certain copper matte that had been shipped by the Cananea Company from the mines claimed by the Cobre Company, consigned to the bank and by it turned over to the smelting company.

(3) The Maricopa county, Ariz., action, brought by the Cobre Company against the Phœnix National Bank and others just previous to the time when the first payment from Mitchell fell due under the original Greene-Mitchell contract. The relief prayed for was that the time for the Cobre Company to make payment of the first installment be extended until it had been restored to possession of the property which had then been conveyed to the Cananea Company, that Greene be required to account to· the Cobre Company for the profits from the mines, and that the Phœnix Bank, the depositary of said agreement, be restrained from delivering the escrow papers to Greene. This action did not concern the Elisa mine property, but seems to have involved many of the rights of the Cobre Company asserted in the present action.

(4) The action brought by Hollenborg in Yavapai county, Ariz., suing as a stockholder, and as creditor of the Cobre Company, in which action the Cobre, Cananea, and Greene Companies, and Greene, Mitchell, the Phœnix Bank, Costello, and others were defendants. In this action the principal transactions recited in the complaint herein were set forth, and it was sought, among other things, to restrain Greene and Mitchell from demanding, and the Phœnix Bank from delivering, the escrow documents, and for an accounting by Greene, Mitchell, and the Cananea and Greene Companies with the Cobre Company.

Before considering the effect of any of these judgments, it may be well to dispose of a preliminary objection.

[4] The plaintiffs contend that they are not bound by a decree in the action of any other stockholder, regardless of whether the issues were or were not identical with those in the present action. Assuming that the corporation was a party to such other action (as it necessarily was), there can be no doubt that plaintiff is bound the same as if he had himself been plaintiff. In other words, plaintiff is bound by a judgment upon a similar cause of action in favor of a stockholder, whether the action purported to be brought in behalf of all other stockholders or not, the same as he would be bound by a judgment on similar issues against the corporation itself. The stockholders' action being but a derivative one, no stockholder has the right to sue for himself alone; his action is necessarily representative whether he calls it so or not, and any judgment in such an action—the corporation being a party—binds all stockholders. Alexander v. Donohoe, 143 N. Y. 203, 38 N. E. 263; Brinckerhoff v. Bostwick, supra; Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184; Dana v. Morgan (D. C.) 219 Fed. 313; Willoughby v. Chicago Junction Ry. et al., 50 N. J. Eq. 656, 25 Atl. 277.

[5] In the action of Hollenborg, first above referred to, the complaint was dismissed on the merits. In that action, however, the three other above-mentioned judgments were also, as here, pleaded in bar, and were by the judgment in the said action of Hollenborg held to be determinative of the issues in that action. The learned court below in a careful and satisfactory opinion, and also in the findings, has at great length analyzed and compared the issues in the said

action of Hollenborg with those in the present action. As the learned court said, although in their detail of allegations of fact the complaint in the Hollenborg action and the complaint in the case at bar are not alike, the fundamental distinction plaintiffs seek to draw between the two actions is that in the Hollenborg action plaintiff's theory was that the entry by Greene into possession of the mines and properties in question and the transfer thereof by him to the Cananea Company were a fraud upon the stockholders of the Cobre Company, and that by means of said transfer the Cananea Company became a constructive trustee of the properties conveyed, for the benefit of the Cobre Company; whereas, in the present action it is alleged that Greene's possession and transfer were in behalf of the Cobre Company, and that the Cananea Company took the properties subject to an express trust in favor of the Cobre Company. We are not unmindful of the distinction between constructive and express trusts, and the varied rights they may involve; but, as the learned court below clearly shows, the substantial and determinative facts on which the several plaintiffs in the respective actions relied for relief are not materially different. In the one case the plaintiff repudiated the acts of Greene and the Cananea Company and elected to hold the latter as a trustee ex maleficio, while in the other the present plaintiffs have elected to ratify Greene's acts, and so claim that the Cananea Company took and holds the properties upon an express trust. In brief, the difference between the two actions narrows down to a mere difference of theory or legal effect; the substantial facts remaining the same. A multitude of decisions could be cited to show that under the circumstances narrated the former judgment was a bar. Northern Pacific R. R. Co. v. Slaght, 205 U. S. 122, 27 Sup. Ct. 442, 51 L. Ed. 738; United States v. California & Oregon Land Co., 192 U. S. 355, 24 Sup. Ct. 266, 48 L. Ed. 476; Werlein v. New Orleans, 177 U. S. 390, 20 Sup. Ct. 682, 44 L. Ed. 817; Reich v. Cochran, 151 N. Y. 122, 45 N. E. 367, 37 L. R. A. 805, 56 Am. St. Rep. 607; Pray v. Hegeman, 98 N. Y. 351.

Giving to the judgment in the Hollenborg action the effect to which we deem it to be entitled, it is unnecessary to determine whether or not the other judgments also operated as a bar.

The eighth conclusion of law, that the court had no jurisdiction of this action, should be reversed, and the judgment dismissing the complaint on the merits should be affirmed, with costs. Order filed. All concur.