DANA v. MORGAN et al.

(Circuit Court of Appeals, Second Circuit. March 14, 1916.)

No. 178.

1. JUDGMENT ⟳701—CONCLUSIVENESS—STOCKHOLDER'S SUIT.

A judgment of a state court, dismissing a suit, brought by a stockholder, on behalf of himself and all other stockholders similarly situated who cared to join, against the corporation and an officer, to set aside a contract for the compensation of the officer as ultra vires, and to compel a return of the moneys received by the officer, is conclusive, in the absence of fraud or collusion, against a subsequent suit by another stockholder, on behalf of himself and others, to have the same contract set aside as a fraud on the corporation, and to have the moneys received thereunder returned, where the second stockholder knew of the pendency of the first suit, but did not intervene therein, since the rights sought to be enforced were the rights of the corporation, and not directly the rights of the stockholder, and, the corporation having been a party to the first suit, its rights were thereby concluded.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1226; Dec. Dig. ⟳701.]

---

⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. JUDGMENT ⊕⟶701—CONCLUSIVENESS—STOCKHOLDER'S SUIT—ISSUES.

   The fact that the objection of fraud was not raised in the first suit does not affect the conclusiveness of the judgment, since the same relief was asked, and if the plaintiff in the second suit had intervened in the first, as he had a right to do, he could have advanced any ground that might exist for holding the contract invalid.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1226; Dec. Dig. ⊕⟶701.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Charles A. Dana, in behalf of himself and other stockholders, against Edwin D. Morgan and another. From a decree dismissing the bill (219 Fed. 313), plaintiff appeals. Affirmed.

This cause comes here on an appeal from a decree of the District Court of the United States for the Southern District of New York, filed on January 14, 1915. The defendant company is a corporation organized and existing under the laws of the state of Colorado. It was formed for the purpose of raising and selling live stock and for purchasing, leasing and working gold and silver and other mines in the republic of Mexico. The company has a capital stock of $1,500,000 and the incorporators were men of means, and among them were George Bliss, Theodore K. Gibbs and Edwin D. Morgan, at one time Governor of New York and grandfather of the defendant Morgan.

The plaintiff, as the executor of Charles Dana, is the owner of about 4,000 shares of the stock of the defendant company, and is a citizen and resident of New York. The defendant Morgan is a citizen of Rhode Island. It is alleged that he represents, in himself and on behalf of his father's estate or other relatives, about 19,000 shares of the stock of the defendant company. He became president of the company, serving in that capacity without salary. In 1910 he resigned as president, and subsequent to his resignation and on December 7, 1910, entered into a contract with the company whereby it was agreed that he should act as the general agent of the company for a period of 10 years beginning with the year 1911. The contract provided the amount of compensation which Morgan was to receive for his services. But as the provision relating to that subject is complicated and lengthy it is not set forth in detail in this connection. The original contract of December 7, 1910, was modified on May 8, 1911, in respect to the compensation which Morgan was to receive for his services. But it is not necessary to state the terms as changed. Under each contract he was to receive his compensation through commissions. And it is alleged that during the years 1911 and 1912 the defendant Morgan received under the contracts more than the sum of $32,000.

The contract of December, 1910, and the subsequent contract of May, 1911, were each submitted by the directors to a stockholders' meeting, at which they were ratified and confirmed. The first contract was ratified by a vote of 81,489 shares in the affirmative as against 19,810 shares in the negative; the Morgan stock not being voted. At a subsequent meeting of the stockholders the contract of 1911 received,

along with other matters submitted for approval, a ratifying vote of 99,033 for as against 38,714 in the negative.

Parson, Clossom & McIlvaine, of New York City (Herbert Parsons, of New York City, of counsel), for appellant.
William W. Cook, of New York City, for appellee Morgan.
Boothby, Baldwin & Hardy, of New York City (Charles F. Brown, of New York City, of counsel), for appellee Corralitos Co.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This is a stockholder's suit. The plaintiff sues on behalf of himself and all other stockholders who did not consent to the making of the contracts complained of and who are willing to contribute to the expense of the action. The complaint states that the commissions which the defendant company agreed to pay defendant Morgan under the contracts were excessive and beyond what the earnings of the company warranted and that they were more than the fair and reasonable value of his services. The bill alleges:

"The excessive compensation thereby sought to be secured to the defendant Morgan has been and will have to be paid out of moneys which of right and in the exercise of sound discretion should be distributed to the stockholders of the said corporation as dividends or used for the development of its property or in the satisfaction of the mortgage or the retirement of its preferred stock; and such sums as have been paid have been so paid and such sums as the said pretended contracts contemplate shall be paid are to be so paid in fraud of the rights of the defendant company and of its stockholders. Each of the said pretended contracts was made in bad faith, was in fraud of and was oppressive and unfair to the defendant company and the stockholders thereof and contemplates a dissipation of the profits and assets of the said corporation and the waste of its capital."

The bill also alleges that the plaintiff did not consent to the making of either of the contracts and that he has not consented to the making of any payment to the defendant Morgan under the contracts. The bill also alleges that it is impossible to get the corporation to bring the action and that it is therefore made a party defendant. A decree is sought directing repayment to the defendant company by the defendant Morgan of the excess of compensation which the defendant company has paid to him under the contracts.

This suit was commenced in November, 1913, and it appears that in November, 1912, a stockholder in the same company, James Harold Warner, commenced a suit against these same defendants in the Supreme Court of the state of New York on these same contracts. The suit was brought by Warner in the words of the complaint "on behalf of himself and all the stockholders of the Corralitos Company who did not consent to the making of either of the two contracts." The bill in that suit alleged:

"That the amount of the salary fixed by each of the said contracts is grossly disproportionate to the reasonable value of the services which defendant Edwin D. Morgan bound himself in the said contract to render; that the reasonable value of the said services is not more than $2,500 per year. On information and belief that the sum of $32,000 has been paid to defendant Ed-

win D. Morgan under the said contracts. That the plaintiff did not consent to the payment thereof or any part thereof.

"Wherefore the plaintiff demands judgment against the defendants that the said contracts be set aside and that defendant Edwin D. Morgan account for the sums of money which he has received under the said contracts and that defendant the Corralitos Company be enjoined, pending the determination of this action, from paying any more money to defendant Edwin D. Morgan under either of the said contracts and for such further and other relief as may be just, together with the costs and disbursements of this action."

The demand for judgment in the case at bar reads as follows:

"Wherefore, the plaintiff demands judgment against the defendant that the said pretended contracts be set aside and cancelled, that the defendant Morgan account for the sums of money which he has received under the said pretended contracts, that he pay back to the defendant company the difference between the sums of money so received and the fair and reasonable value of his services rendered to the defendant company during the period for which he received the said sums, and that the defendant company be enjoined pending the determination of this action, from paying any more money to the defendant Morgan under either of the said pretended contracts; and for such further and other relief as may be just, together with the costs and disbursements of this action."

In the suit in the New York court judgment was entered for the defendant and the bill was dismissed. Warner v. Morgan, 81 Misc. Rep. 685, 143 N. Y. Supp. 516. That court in its findings of fact found that the contracts were within the company's chartered powers, that there was no proof that they were fraudulent or oppressive, that the contracts were exceptionally favorable to the defendant company, and that the contract as modified by the contract of May 8, 1911, was in all respects valid. And this judgment has been affirmed by the Appellate Division. 165 App. Div. 903, 149 N. Y. Supp. 1117.

It appears that the plaintiff in the case at bar was well aware, at the time, of the pendency of the suit in the New York court; that he knew of it from the time of its commencement and could at any time have intervened therein and become a party thereto. He did not, however, see fit to do so. And it is claimed now that he is concluded by that judgment and that the question involved in this case is res adjudicata. The court below dismissed the bill on that ground.

It is evident that the plaintiff in this court seeks exactly the same result that the plaintiff in the New York suit sought. They both attempted to have the contracts under which the defendant was employed set aside. And they both alleged that the defendant has received from the company for his services under these contracts a remuneration grossly in excess of the value of his services, and they both sought to require him to account to the company for the moneys he has so received.

[1] Warner predicated his suit on the theory that the contracts were ultra vires and the plaintiff has predicated this suit upon the theory that the contracts were made in bad faith and in fraud of the company. But we are not able to see that this difference in the method by which these two plaintiffs sought to maintain their suits affects in any way the result. The cause of action was the same. The right of the plaintiff to sue is, in this case, as it was in the New York case, a right to

sue for the wrong alleged to have been done to the defendant corporation. Neither suit was brought to redress a wrong which was personal to the party who brought the suit. There is a vast difference between the right of a shareholder to sue for the redress of an injury done to the corporation, and the right to sue to redress an injury done to the shareholder individually. The judgment in the state court is conclusive not only upon the stockholders who brought the suit but upon the corporation also and upon those who had the right to intervene but did not avail themselves of it. Burland v. Earle, [1902] A. C. 83, 71 L. J. P. C. 1; Willoughby v. Chicago Junction Railways, etc., Co., 50 N. J. Eq. 656, 25 Atl. 277; Appleton v. American Malting Co., 65 N. J. Eq. 375, 54 Atl. 454; Goodbody v. Delaney, 80 N. J. Eq. 417, 83 Atl. 988; Hearst v. Putnam Mining Co., 28 Utah, 184, 77 Pac. 753, 66 L. R. A. 784, 107 Am. St. Rep. 698; Jones v. Johnson, 10 Bush '(Ky.) 649; 10 Cyc. 993.

It makes no difference, in the absence of fraud or collusion, that a stockholder's suit is prosecuted by one or more, or by all, the stockholders; the suit being brought on behalf of all others of like interest joining therein. As was said in Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663, the action is really the action of all the stockholders, as it is necessarily commenced in their behalf and for their benefit. And as in such suits the wrong to be redressed is the wrong done to the corporation and as the corporation is a necessary part to the suit, it inevitably follows that there can be but one adjudication on the rights of the corporation. And it is undoubted law that the judgment in the state court is an estoppel and a finality not only as to all matters actually litigated in the suit but also as to all matters which were not but might have been presented to the court and passed upon therein. See Landon v. Bulkley, 95 Fed. 344, 37 C. C. A. 96.

The plaintiff in support of his contention that he is not concluded refers us to Wabash Railroad Co. v. Adelbert College, 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379, which he cites as "the leading authority." But the doctrine announced in that case has no application to the facts of this case. The plaintiff in the case there relied on had not brought a stockholder's suit and had not asserted a right of the corporation. He was asserting a right which he possessed in his individual capacity. The railroad company had issued what were known as "equipment bonds," and at the time of their issuance they were unsecured. Subsequently the railroad company consolidated with certain other railroad companies and the theory of the plaintiff was that the consolidation resulted in giving to these originally unsecured obligations an equitable lien upon the property of the corporation which issued them, and that the equity of redemption of that property went into the hands of the consolidated corporation encumbered by that lien. The holders of some of these bonds brought suit against the Wabash Company and alleged that the suit was brought "on their own behalf, as well as in behalf of all those in like interest who may come in and contribute to the expenses of and join in the prosecution of this suit." No notice of the pendency of the suit was given to the other holders of the bonds other than by this allegation of the bill. The trial court

held a lien existed and the Supreme Court reversed it and denied the existence of the lien. That was in Wabash, etc., Railway v. Ham, 114 U. S. 587, 5 Sup. Ct. 1081, 29 L. Ed. 235. Thereafter another holder of similar bonds issued by the Wabash brought a similar suit and it was contended that the judgment in the former case constituted a bar to the claim for lien of all the holders of the equipment bonds, whether they were parties or privies to the first suit or not. The theory on which counsel relied was that the first suit was a representative or class suit and that the judgment bound all of the class, even if not parties or privies. But the Supreme Court held that the first suit was not a representative suit in the sense that the judgment in it bound those who were not parties to it. We do not doubt the correctness of that decision as applied to the facts of that case. But in the case at bar the plaintiff in the New York suit was asserting the right of the corporation and the corporation was a party to the suit and concluded by that judgment. So that when Dana filed the second suit to vindicate the right of the corporation he was seeking to vindicate a right ·which the New York court had conclusively determined as against the corporation itself, and therefore as against him, did not exist. The principle certainly cannot at this late day be successfully challenged that every member of a corporation is so far privy in interest in a suit against the corporation that he is bound by the judgment against it.

The plaintiff's difficulty is that he apparently overlooks the real nature of a stockholder's suit. The true theory of such a suit is well stated by Pomeroy in his work on Equity Jurisprudence (volume 3, § 1095). He says:

"The stockholder does not bring such a suit because his rights have been directly violated, or because the cause of action is his, or because he is entitled to the relief sought; he is permitted to sue in this manner simply in order to set in motion the judicial machinery of the court. The stockholder, either individually or as a representative of the class, may commence the suit, and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by the corporation; it is maintained directly for the benefit of the corporation, and the final relief, when obtained belongs to the corporation and not to the stockholder plaintiff. The corporation is, therefore, an indispensably necessary party, not simply on the general principles of equity pleading, in order that it may be bound by the decree, but in order that the relief, when granted, may be awarded to it, as a party to the record, by the decree. This view completely answers the objections which are sometimes raised in suits of this class, that the plaintiff has no interest in the subject-matter of the controversy, nor in the relief. In fact, the plaintiff has no such direct interest; the defendant corporation alone has any direct interest; the plaintiff is permitted, notwithstanding his want of interest to maintain the action solely to prevent an otherwise complete failure of justice."

In Cook on Stockholders, § 692, the law is correctly stated as follows:

"The rule that the corporation itself is an indispensable party defendant to such suit is due to the fact that all other possible future suits by the corporation are thereby prevented, the rights of the corporation are duly ascertained and the remedy made effectual against the corporation as well as others."

In Alexander v. Donohoe, 143 N. Y. 203, 38 N. E. 263, Judge Earl speaking for the New York Court of Appeals as to a stockholder's suit said:

"Suing as a stockholder the plaintiff's right of action is a derivative one. He sues, not primarily in his own rights, but in the right of the corporation. The wrongs of which he complains are wrongs to the corporation. They were not aimed at him and did not involve his personal, individual rights. He suffers as a member of the corporation."

The plaintiff insists that the judgment of the New York court does not affect him, as he was not a party to it, a privy to it, or represented in it. The answer is that the corporation whose interest he seeks to represent in this suit was a party to that action and is concluded by it and that that concludes him.

[2] The plaintiff also insists that he has not had his day in court on the issues he presents. The complaint does not lie in his mouth to make. He knew of the pendency of the other suit and he had an opportunity to be heard in it. It was expressly for the benefit of any and all the stockholders who might come in and contribute to its expense. At any time before decree he might have been made a party if he had chosen to intervene, and having become a party he might have informed the court of anything he deemed important to bring to its attention and might have had the bill of complaint amended if the court concluded an amendment necessary. The question whether he should intervene or commence an independent suit was considered by him and he concluded that he would not participate in the New York suit. He had his opportunity and declined to avail himself of it.

In view of the conclusion which we have reached it is not necessary to consider any of the other matters submitted to the court.

Decree affirmed.