Julius H. REITER et al., Appellants,

v.

UNIVERSAL MARION CORPORATION et al., Appellees.

No. 16572.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 4, 1961.

Decided Jan. 25, 1962.

**450**

Mr. Milton M. Gottesman, Washington, D. C., with whom Mr. A. Alvis Layne, Washington, D. C., was on the brief, for appellants.

Mr. Edmund L. Jones, Washington, D. C., with whom Mr. John J. Ross, Washington, D. C., was on the brief, for appellee Mullaney and certain other appellees.

Messrs. Andrew T. Altmann and George E. Flather, Jr., Washington, D. C., were on the brief for appellee Universal Marion Corp.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from the District Court for the District of Columbia, which dismissed a stockholders' derivative action brought by appellants against the Universal Marion Corporation, its officers and directors. The dismissal was on the ground that a prior New York judgment was res judicata of the issues in the case at bar.

The present suit was filed on October 11, 1957. Plaintiffs alleged that defendants, officers and directors of the Corporation, in concert with Louis E. Wolfson and his associates, the Corporation's controlling stockholders, managed the Corporation for their own benefit and that of the Wolfson group, at the expense of the plaintiffs and other stockholders. The complaint charges that defendants have continuously invested the capital of Universal Marion in companies owned or controlled by the Wolfsons. In particular, it challenges two transactions. First, under a contract dated July 15, 1957, the Corporation issued 188,235 shares of its stock to Louis E. Wolfson, members of his family, and charitable trusts established by him, in return for the assets of Southern Pipe and Supply Company, a Florida corporation owned by the Wolfsons. Second, under a series of contracts entered into between January 1, 1957, and August 13, 1957, Universal Marion invested almost $6,000,000 in the acquisition of a block of 250,000 shares of stock in Merritt-Chapman & Scott Corporation from A. I. Savin of Hartford, Connecticut, and his two sons. The complaint alleged that these transactions were wasteful and improvident, and designed to further the aims and interests of the Wolfson group.

On September 25, 1957, some two weeks prior to the institution of the District of Columbia suit, a stockholders' derivative action on behalf of Universal Marion against the company's directors and others was commenced in the Supreme Court of the State of New York. On May 8, 1958, that action was combined with additional similar derivative complaints in the New York Supreme Court.

The complaint in this consolidated New York action, entitled Esposito v. Segal, Index No. 13605/57, New York County, sought money damages and "such other and further relief as may be deemed just and equitable in the premises." The dealings attacked in the New York complaint clearly included both the Southern Pipe and the Savin transactions. Under New York law the plaintiffs in the New York action could have obtained equitable and injunctive relief under the prayer for general relief, if the evidence had so warranted.

In December of 1958, counsel for the plaintiffs in the New York suit began negotiations looking toward a settlement, which was reached toward the end of January, 1959. The terms agreed upon were embodied in a Stipulation of Settlement, dated February 13, 1959. Counsel for plaintiffs in the proceeding in the District of Columbia were fully informed of the conclusion of the New York settlement and its terms. In accordance with the usual New York practice, the Stipulation was submitted to the New York court for approval. That court referred the Stipulation to Referee Louis A. Valente to determine whether the settlement was fair, reasonable and adequate, and "whether or not the said proposed settlement should be approved and confirmed." The referee held hearings on the question after giving notice to all interested parties, including appellants here. On the first day scheduled for the hearing, March 18, 1959, the referee adjourned the matter until March 20, 1959, in order to give plaintiffs here an additional opportunity to participate. Notification was given to counsel for plaintiffs in the District of Columbia both by mail and by telephone on March 18, 1959. After hearing, Referee Valente recommended that the proposed settlement be approved and confirmed. No later than May 29, 1959, notice was given to all stockholders of Universal Marion of a hearing to be held on June 22, 1959, to determine whether the referee's report should be confirmed.

After a hearing, Mr. Justice Aurelio entered a judgment on July 17, 1959. He confirmed the referee's report, approved the settlement as "fair, reasonable and adequate," dismissed the New York action with prejudice, and retained jurisdiction in order to enforce the judgment. No appeal was taken from this judgment. Both the referee and Mr. Justice Aurelio were fully advised of the pendency of the District of Columbia action. The plaintiffs in the latter action did not appear in the New York litigation.

Meanwhile, in the District of Columbia suit, plaintiffs had answered "ready for trial" to the Calendar Call made on November 20, 1958. On the same day, defendants moved to stay this action because of the pendency of the Esposito case.[1] On December 1, 1958, that motion was granted by the District Court. After denial of plaintiffs' petition for rehearing, they petitioned this court for mandamus to vacate that stay. On February 26, 1959, we granted these plaintiffs leave to file that petition, and suggested that the District Court reconsider the stay which it had granted. Judge Tamm then vacated the stay and referred the question to Judge McLaughlin for reconsideration. After hearing, Judge McLaughlin denied a further stay of this action on March 20, 1959. Then, on March 27, 1959, plaintiffs moved the District Court to enjoin defendants from participating in any agreements or proceedings intended to release or prejudice the District of Columbia claim. On April 28, 1959, Judge Holtzoff denied plaintiffs' motion for a preliminary injunction, and granted defendants another stay against the local derivative action pending disposition in New York of the Esposito case. Judge Holtzoff also denied plaintiffs' motion for leave to file a supplemental complaint alleging additional injuries sustained by the corporation as a result of defendants' continuation of their course of conduct after the filing of the complaint. To preserve our jurisdiction, we temporarily enjoined defendants from releasing the

1. In referring to "defendants," we mean the individual defendants, unless otherwise indicated.

claim, on June 16, 1959. But the New York court nevertheless approved the settlement which purported to effect such a release, on July 17, 1959. This court on December 10, 1959, vacated its prior injunction, since the New York judgment had mooted the question of whether the consummation of the settlement should be enjoined. In order to avoid prejudice to the plaintiffs here, we also vacated the orders appealed from, and we expressly said that—

"when the local derivative suit is restored to the calendar of the District Court, [plaintiffs] should not be precluded by any prior proceedings in the cases now before us from asserting, inter alia, that the Esposito settlement was inequitably obtained, or from otherwise contesting the validity and effect of the Esposito settlement with respect to the local derivative action, or from urging that the issues in the two suits are not identical." Reiter v. Universal Marion Corp., 107 U.S.App.D.C. 6, 11, 273 F.2d 820, 825 (1959).

On remand to the District Court, defendants pleaded the affirmative defenses of res judicata and release. Plaintiffs alleged that the New York judgment did not bar this action because it was obtained by inequitable conduct and fraudulent concealment on the part of defendants, and because the issues in the two cases were different. After discovery, defendants moved for summary judgment on their res judicata defense, but Judge Walsh ruled that under our decision of December 10, 1959, the effect of the New York settlement on this case was an issue of fact to be resolved at trial. Hearings began on June 5, 1961, before Judge Tamm, who decided to hear evidence, in the first instance, only on the res judicata question. Judge Tamm upheld the res judicata defense, and rejected plaintiffs' request that he go on to a hearing on the merits. He dismissed this action, after concluding that there was "no fraud, collusion, inequitable or unconscionable conduct in the obtaining of the New York judgment," and that "the issues in this action and those in the New York stockholders' derivative action are identical." Plaintiffs now appeal from the dismissal of their complaint.

■ The full faith and credit clause of the Constitution, and the relevant statute, 62 Stat. 947, 28 U.S.C. § 1738, require us to give the Esposito judgment exactly the same force and effect that it would have in New York. See, e. g., Fauntleroy v. Lum, 210 U.S. 230, 28 S. Ct. 641, 52 L.Ed. 1039 (1908). Under New York law, a final judgment in one suit is res judicata as to another action if the causes of action are similar and the substantial and determinative facts of the two cases are not materially different. Grant v. Greene Consolidated Copper Co., 169 App.Div. 206, 154 N.Y. S. 596 (1915), affirmed, 223 N.Y. 655, 119 N.E. 1046 (1918). Moreover, it is clear that under New York law a final judgment in a stockholders' derivative action, binding upon the corporation, has res judicata effect and bars further litigation on the underlying causes of action. See Stella v. Kaiser, 218 F.2d 64 (2d Cir. 1954), cert. denied, 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745 (1955); Dana v. Morgan, 232 F. 85, 89–90 (2d Cir. 1916). We think it clear that both the Esposito complaint and the Reiter litigation deal with the same essential facts. Both challenge the Southern Pipe and the Savin transactions. The relief available was, as the trial judge found, substantially the same in both cases. The corporation was a party to both suits, and its directors were named as defendants in both, though not all were served in the New York litigation.

■ After comparing the pleadings in the New York case and the litigation here, we find no difference between them substantial enough under New York law to preclude the res judicata effect of the prior New York judgment.[2] The issues

---

2. The findings of fact on this issue by the District Court were:

"14. The transactions complained of in the instant action and those com-

in the two cases are not rendered "different," so as to avoid the impact of the full faith and credit clause, merely because the plaintiffs in the District of Columbia suit based their request for relief on the theory that defendants were engaged in a continuous course of conduct designed to further the interests of the Wolfson group and because plaintiffs prayed for an injunction against such conduct.[3] For full faith and credit purposes, the issues and the facts were the same; no meaningful distinction can under the circumstances be drawn based on the nature of the relief sought, or the theory advanced by the parties plaintiff. See, e. g., Miller v. National City Bank of New York, 166 F.2d 723, 726–27 (2d Cir. 1948).

But appellants also contend that the Esposito settlement was the result of inequitable collaboration and that the New York court's approval of the settlement was fraudulently obtained. Judge Tamm held a hearing which was in large part devoted to taking evidence on precisely these allegations. He had the record of the New York court before him and heard testimony from counsel who had negotiated the New York settlement. He concluded that there was no fraud or collusion.

Appellants contend in this court that the New York case was "under the directors' control" and could not "be brought to trial," and that the corporate directors, when testifying before the New York court, failed to disclose material facts bearing on the fairness of the settlement. Appellants' most substantial point is that defendants-appellees Rittmaster and Mullaney, directors who testified at the New York hearing, did not reveal that the Merritt Company "or its designee" had a contractual right to buy the Savin shares at a lower price than Universal Marion paid. But Rittmaster, a director of Merritt as well as of Universal Marion, testified that while Merritt had a "right of refusal" to buy the shares, it had insufficient cash to make the purchase; that it was required to meet a sinking fund commitment for the payment of outstanding debentures; and that counsel advised against the purchase for tax reasons. These were the reasons, he said, which motivated the Merritt directors to waive Merritt's right of first refusal.[4] He was not asked to, and did not, testify concerning the possibility that Merritt could have transferred to Universal Marion its right of purchase. Appellants urge that the real reason Universal Marion was chosen to buy the stock, and made to pay a higher price than Merritt would have paid, was that both Merritt and Universal Marion were controlled by the Wolfson interests, and the latter were anxious to placate the Savins and adjust outstanding difficulties with them. But regardless of what the true reasons for the acquisition may have been, we are bound by the New York law on the matter, and it seems clear that the New York courts would not permit a collateral attack upon a settlement and resulting judgment on the basis appellants urge. See Crouse v. McVickar, 207 N.Y. 213, 100 N.E. 697, 45 L.R.A.,N.S., 1159 (1912); Chenu v. Board of Trustees, 12 App.Div.2d 422, 212 N.Y.S.2d 818 (1961). In addition to this legal ground, we must note that the District Court here rejected all of appellants' contentions of fraud and collusion. We are unable to say, on the record before us, that its findings of fact

---

plained of in the New York action are identical.

"15. The issues in this action and those in the New York stockholders' derivative action are identical."

3. Plaintiffs below requested damages for the Merritt-Chapman and Southern Pipe agreements and an injunction for bidding Universal Marion from making any agreements with defendants or companies owned by them, unless such agreements were negotiated or approved by persons other than defendants or their appointees. Plaintiffs also asked that until the corporation "has been made whole for injuries sustained," the corporation be enjoined from making any payments or giving any benefit or advantage to defendants.

4. Rittmaster and Mullaney, who were directors of Universal Marion as well as Merritt, did not participate in Merritt's decision.

454

are clearly erroneous within the meaning of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.

For the above reasons, we conclude that the District Court acted correctly in dismissing the District of Columbia stockholders' suit, and indeed was obliged to do so under the full faith and credit clause.[5] We have reached this result, however, only after the most careful scrutiny of the record. In situations like the one before us, the danger always exists that an unscrupulous defendant, knowing of impending litigation, may seek to have suit instituted against him in a different jurisdiction where, because of procedural or other reasons, recovery is less likely. And lawyers have on occasion been known, for the sake of insuring a fee, to compromise a stockholders' derivative suit for an inadequate amount. It was this sort of skulduggery, which is to be avoided and condemned wherever possible, that plaintiffs-appellants unsuccessfully sought to establish in the latest hearing in this case. On the record before us, we are constrained to affirm. Here, the New York action was instituted prior to the District of Columbia action. The defendant corporation is no longer, as it was at the beginning of the suit, a District of Columbia corporation. Plaintiffs below were given numerous notices and ample opportunity to take part in the New York proceeding, and could have drawn to the attention of the referee and judge any facts known tending to show fraud or overreaching.[6] In addition to plaintiffs, all stockholders of Universal were notified of the hearing before Justice Aurelio. Two full hearings were held in the New York action, one before the referee and one before the court. The proposed Esposito settlement was held to be "fair, reasonable and adequate," and found to have been "negotiated at arms' length and in good faith." In approving the New York settlement,

both Referee Valente and Justice Aurelio were fully informed of the pendency and posture of this action. Finally, the District Court below held a thorough hearing on the question of the res judicata effect of the New York judgment. Finding an identity of issues between the two actions, and no collusion or unconscionable conduct of any kind in the New York suit, it rendered judgment in favor of the defendants.

Under these circumstances, and for the reasons given, we conclude that the judgment of the District Court must be

Affirmed.

---

5. Plaintiffs are, of course, not precluded by anything here said from instituting another action based on any transactions not included in the New York settlement.

6. Cf. Reddick v. State, 213 Md. 18, 130 A.2d 762 (1957); Bell v. Board of Commissioners, 195 Md. 21, 72 A.2d 746 (1950). See also De Bobula v. Goss, 90 U.S.App.D.C. 28, 193 F.2d 35 (1951); Dana v. Morgan, supra, 232 F. at 91.