Carolyn O. GOLDMAN,
Plaintiff-Appellant,

v.

NORTHROP CORP., Nominal Defendant,

Ernst and Ernst, R. P. Colley, Thomas J. Jones et al., Defendants-Appellees.

No. 77–2755.

United States Court of Appeals,
Ninth Circuit.

Aug. 28, 1979.

Gene Mesh, Cincinnati, Ohio, for plaintiff-appellant.

Howard P. Willens, Wilmer, Cutler & Pickering, Washington, D. C., for defendants-appellees.

Before BARNES, MERRILL and TANG, Circuit Judges.

MERRILL, Circuit Judge:

On April 21, 1975, appellant Goldman, a shareholder in Northrop Corporation, brought this shareholders' derivative action in the Central District of California. The action was brought on behalf of Northrop, which was made a nominal defendant. The complaint alleged that the individual defendants, officers and directors of Northrop, had secretly converted and wasted corporate funds for illegal purposes believed to include the making of "bribes to foreign governments, payoffs to certain individuals * * * and unreported and illegal fees and sales commissions * * *." Violations of the Securities Exchange Act, 15 U.S.C. § 78m, and the Federal Election Campaign Act, 18 U.S.C. § 610, were charged.

A year earlier the case of *Springer v. Jones*, also a shareholders' derivative action, had been brought against certain officer-directors. The complaint charged these officer-directors with making allegedly improper corporate expenditures in the name of Northrop. Judgment was entered pursuant to stipulation of settlement. Judge Warren Ferguson of the Central District of California presided throughout. When the complaint in the present action was filed, it also was assigned to Judge Ferguson. The motion of defendants to dismiss the action was granted on the ground that judgment in *Springer v. Jones* constituted *res judicata*.[1] This appeal was taken challenging the ruling made below. The question we must answer is whether the complaint in this case presents issues not raised and that could not have been raised in the *Springer* case. Resolution of that question requires consideration of the facts leading to the commencement and settlement of *Springer*.

*Springer Suit*

In March, 1974, Northrop's management disclosed to the Board of Directors the fact that Northrop corporate funds had unlawfully been used to make political contributions to President Nixon's 1972 re-election campaign. The Board took prompt action. It reconstituted its Audit Committee to consist solely of outside directors independent of any management or other substantial business connection with the corporation. That committee, with the authority of the Board, employed Ernst & Ernst, with Price, Waterhouse & Company participating, as auditors to investigate the extent of unlawful political contributions made by Northrop. Since the source of the Nixon campaign contribution had been a Paris-based consultant, the auditors were also instructed to review Northrop's relationships with foreign consultants and agents.

On May 1, 1974, the Watergate Special Prosecutor filed criminal informations against Northrop and two of Northrop's officers for the reimbursement by Northrop of contributions originally made with personal funds. Guilty pleas were entered. On May 24, 1974, the complaint in *Springer v. Jones* was filed, charging that under the direction of certain officers, Northrop had made and failed to disclose domestic political contributions, which violated the proxy rules of the Securities & Exchange Commission and the Federal Election Campaign Act of 1971, and which constituted "fraud, theft and looting of corporate funds."

On November 15, 1974, the auditors commissioned by Northrop's Audit Committee submitted their report to the Board. They noted that their investigation "went beyond political contributions to review the general nature and extent of Northrop's use of consultants (particularly foreign)." They stated that this aspect of the investigation was for "the purpose of (i) identifying various

---

1. The district court also based its dismissal on plaintiff's failure to make timely demand on the Northrop Board of Directors for the action sought by her suit as required by Rule 23.1, Federal Rules of Civil Procedure. Appellant contends that demand would have been futile. This question we need not reach.

Northrop payments or activities relating to such consultants, which are or appear to be unusual or unauthorized, or by their nature, of interest to the Audit Committee, and (ii) making such recommendations as we determine appropriate for the development and improvement of Northrop's internal controls over transactions with such consultants."

The report thereafter dealt in detail with Northrop's relationship with nine different consultants, transactions entered into with them, payments made to them and commitments made for future payments. The report noted that "the utilization of consultants, agents and other independent representatives by Northrop in its dealing with foreign governments involves questions of policy * * * for the Audit Committee and the Board to resolve." It recommended further investigation of Northrop's relationship with these consultants in its international marketing activities, and suggested that Northrop may have participated or acquiesced in unlawful or improper payments to officials of foreign governments.

Thereafter negotiations commenced to settle the *Springer* action, and on January 20, 1975, final judgment based on stipulation of settlement was entered. Annexed to the judgment, and by reference incorporated in it, was an "Undertaking" by Northrop specifying the future action it was committed to undertake. First, it committed itself to complete, through the Executive Committee, the inquiry into the company's relationship and arrangement with the consultants identified in the Auditors' Report. Next, it committed itself to a reconstitution of the Board, the Executive Committee, the Audit Committee and the Nominating Committee to assure that such wrongful conduct as the illegal campaign contributions (and other conduct which had been suggested as possible by the Auditors' Report) would not be repeated.[2]

In acting on the stipulated settlement, Judge Ferguson had before him an "Affidavit in Explanation of Settlement" made by counsel for Springer. It stated:

"In the opinion of counsel for plaintiffs, this settlement, which was reached as the culmination of the extensive and exacting arm's-length negotiations, provides protection of the shareholders' interest particularly by providing mechanisms to prevent the recurrence of the illegal activities which were the subject matter of the complaint; mechanisms to complete the investigation and to fully disclose the results of the investigation; mechanisms to ensure that the affairs of this publicly-held Company will be governed primarily by Independent Directors; and mechanisms to assure the political neutrality of this large governmental defense contractor Company. In negotiating the settlement and appraising its fairness to the shareholder class, plaintiffs' counsel also considered the high cost of continued litigation to the Company, including the loss of executives' time; the interests of the Company in reaching a position of stability during a period of extremely sensitive and important competition for future business; and the potential for achieving less benefit and protection for the shareholders by further litigation than through the vehicle of this settlement."

On April 21, 1975, the present action was brought.

On July 16, 1975, pursuant to Northrop's Undertaking in the *Springer* settlement, the Executive Committee made its report to the Board. It acknowledged that serious misconduct was disclosed by its investigation. It recommended adoption of certain policies and procedures. In conclusion it recommended "that the Board of Directors seek to reach the most expeditious resolution of all outstanding disputes, so that Northrop, having learned from its mistakes, can put the past aside and look to its fu-

---

**2.** New "independent outside directors" were to be added to the Board. The Executive Committee of six was to include five independent directors, one of whom was to be the chairman. The Audit Committee and the Nominating Committee were to be composed exclusively of independent outside directors.

ture. Of equal importance is a concerted effort by the Board, begun by this Committee in full collaboration with Company management, to mitigate the impact of past errors on Northrop's current programs and future business prospects abroad." The district court had retained jurisdiction to assure that the Executive Committee and the Board met the commitments made by the company in its Undertaking. No complaint has ever been registered with the court that they failed to do so.

*Goldman Suit*

Appellant points out that the *Springer* complaint was only concerned with the 1972 contributions to the Nixon campaign, while the complaint in this case is concerned with payments unlawful for a variety of reasons made over an extended period of time. She alleges that the sum of such payments could amount to as much as $30,000,000 and contends that an entirely different and far more substantial claim is presented by her complaint.

In ordering dismissal of this action, Judge Ferguson acknowledged that the *Springer* complaint was limited to the 1972 political contributions, "But," he stated, "that was only the springboard for the ultimate settlement" of the suit. He pointed out that Springer could have amended his complaint to reach all matters alleged in the complaint in this action, and that the same result was achieved when the settlement took such matters into account. He stated:

"Now, maybe Jones should have been required to pay $30 million or $15 million or $10 million. But all that was disclosed to the Court and the decision was made that it was not going to do the shareholders of Northrop one iota of good or the corporation to go after that amount of money against Jones. Another approach had to be taken and I think the approach is the valid, sound one."

While the claims in the present suit were not the subject of the *Springer* complaint, they were taken into consideration during the negotiations leading to settlement and the settlement and ultimate judgment took them into account. Instead of choosing the course of securing the greatest possible money judgment from the Northrop officers, the parties and the court chose the course of terminating litigation and taking steps to assure that such conduct as had been disclosed could not occur in the future.

As counsel for the plaintiff noted, it was felt that the corporation would benefit to a greater degree by getting back to business and taking after its competitors rather than continuing intracorporate disputes. *Res judicata* applies to the settlement of a derivative action. *See Reiter v. Universal Marion Corp.*, 112 U.S.App.D.C. 68, 172, 299 F.2d 449, 553 (D.C.Cir.1962). The parties are the same, although represented by different shareholders. Neither Springer nor Goldman sought to obtain personal judgments. The corporation was the sole real party in interest in both cases.

"A final judgment on the merits between parties who in law are the same operates as a bar to a subsequent action upon the same cause of action, settling not only every issue that was raised, but also every issue that might have been raised in the first action." [citations omitted.]

*Flynn v. State Board*, 418 F.2d 668 (9th Cir. 1969).

Judgment affirmed.